**Gladys HAPPY, Appellant,**

v.

**Ralph Waldo BLANTON and Rex Willis Hutchings, Respondents.**

**No. 45445.**

Supreme Court of Missouri, Division No. 2.

June 10, 1957.

Motion for Rehearing or for Modification of Opinion or Transfer to Court en Banc Denied July 8, 1957.

A. J. Anderson, Harrisonville, and Wiley W. Morrison, John J. Alder, and Alder & Bott, Kansas City, for appellant.

E. E. Thompson and Sam Mandell, Kansas City, and Robert Spangler, Harrisonville, for respondent Ralph Waldo Blanton. Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

Wesner & Wesner, Sedalia, for respondent, Hutchings.

STOCKARD, Commissioner.

On April 17, 1954, at about ten o'clock in the evening, plaintiff, Gladys Happy, was riding as a passenger in the front seat of an automobile which was being operated by her husband, Melvin Happy, when it was involved in a three-car collision with automobiles operated by defendant Rex Willis Hutchings and defendant Ralph Waldo Blanton. In this jury tried suit

based on primary negligence in which plaintiff sought $35,000 for personal injuries, plaintiff has appealed from a verdict in favor of both defendants.

The Happy and the Hutchings automobiles were traveling in an easterly direction on U. S. Highway 50 a short distance east of the intersection with Missouri State Highway 13. The weather was warm and dry, and the night was clear. The scene of the collision was at the intersection of U. S. Highway 50 and a private driveway serving as an exit for a drive-in theater. The Happy automobile was proceeding eastward at forty-five to fifty miles an hour and the Hutchings automobile had been following it, although at the time of the collision Hutchings was attempting to pass the Happy automobile. Plaintiff's husband testified that defendant Blanton, who was operating his automobile on the private driveway from the theater and approaching the highway at about ten to fifteen miles an hour, drove onto the highway directly in front of him without stopping and the collision resulted. This was supported by the testimony of Hutchings and the driver of the automobile immediately behind Blanton. In the maneuvering of Hutchings of his automobile to avoid Blanton, he struck the Happy car.

Blanton testified that as he approached the highway he came to a momentary but complete stop for three or four seconds about eight to twelve feet south of the pavement of the highway, and that while stopped he looked to the west and saw no car coming. His view. was unobstructed and he could see to the crest of a rise or hill three hundred fifty to four hundred feet away. He then started forward in second gear. On direct examination he stated that as he proceeded forward toward the pavement after his stop he again looked to the west and did not see the lights of any approaching automobile; that he was "approximately to the center [of the pavement] with the front wheels" of his car when he first saw the headlights of the Happy automobile sixty to seventy feet away approaching at fifty-five to sixty miles an hour; and that the front end of his car was five or six feet over the centerline when it was struck by the Happy car. However, on cross-examination Blanton testified that after he had looked to the west when stopped he did not look to the west again until he had "started moving onto the pavement," and that the front wheels were about two or three feet onto the pavement when he first saw the Happy automobile sixty to seventy feet away.

At the time of the accident and immediately prior thereto plaintiff was not looking to the front, but was engaged in attempting to open a bag of potato chips. She did not see the Blanton car approaching the highway or enter upon it, and she was making no effort to maintain a lookout.

Plaintiff first contends that the trial court erred in giving the following instuction at the request of defendant Blanton: "The Court instructs the jury that if you find and believe from the evidence that as Melvin Happy operated the Oldsmobile, in which Plaintiff was riding, in an easterly direction and as it neared, closely approached and reached the place of collision, between the Oldsmobile and defendant Blanton's Chevrolet, the said Melvin Happy operated said Oldsmobile at a high, dangerous and excessive rate of speed, under all the circumstances and conditions then and there existing, if you so find, and he was thereby negligent, if you so find, and if you further find that at aforesaid time and place said Melvin Happy failed to exercise the highest degree of care to keep a careful lookout ahead and laterally for traffic with which there was imminent danger of collision, and that he was thereby negligent, if you so find, and if you further find that the collision between the Oldsmobile and defendant Blanton's automobile, and any injuries sustained by plaintiff on the occasion in question, and that defendant. Blanton was not negligent in any respect submitted in the instructions of the Court,.

if you so find, then you are instructed plaintiff is not entitled to a verdict against defendant Blanton and your verdict must be in his favor and against plaintiff."

▮▮▮▮ This instruction obviously was intended to constitute what is referred to as a sole cause instruction, and we cannot determine if defendant Blanton inadvertently left something out of the instruction, or if it was intentionally drafted as above set out. But in either event, it is incomplete as it stands and is erroneous. It fails to hypothesize facts which if found by the jury would absolve defendant of fault and consequent liability, and demonstrate as a matter of fact that the acts of plaintiff's husband were the "sole cause" of plaintiff's injuries. This, a sole cause instruction must do. Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Gower v. Trumbo, Mo.Sup., 181 S.W.2d 653; Johnson v. Cox, Mo.Sup., 262 S.W.2d 13; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642. This instruction submits somewhat abstractly and in the conjunctive two separate charges of negligence on the part of plaintiff's husband, and then as to him it there stops. It does not even require the jury to find that the negligence of plaintiff's husband was the "sole cause" of the collision and plaintiff's resulting injuries. See Gower v. Trumbo, supra. Although there is no magic to the words "sole cause," an instruction submitting the issue of non-liability on the part of a defendant because the negligence of a third party was the sole proximate cause of plaintiff's injuries must do more than direct a verdict for that defendant only upon a finding that the third party was in some manner negligent.

▮▮▮▮ A defendant may undertake to absolve himself of liability on the ground that he was not negligent in the respects charged in plaintiff's instructions, and he may submit this issue to the jury by what it referred to as a converse instruction, which by its nature does not call for the hypothesization of facts to show that the injuries of the plaintiff resulted from the negligence of someone else. A defendant may also undertake to absolve himself of liability on the ground that the negligence of the plaintiff or of some third person was the sole proximate cause of plaintiff's injuries, and he may submit this issue to the jury by what is referred to as a sole cause instruction. This latter form of an instruction, as contrasted to a converse instruction, concedes that the injuries to plaintiff resulted from the negligence of someone, and it authorizes a finding by the jury for the defendant only if it finds that the negligence of the plaintiff, or someone other than the defendant, was the sole proximate cause of the injuries, and also that defendant was not negligent, or if he was negligent that his negligence was not concurring negligence. Therefore, if the defendant undertakes to absolve himself from liability to plaintiff on the basis of sole cause negligence, he thereby assumes the burden of hypothesizing a statement of facts, supported by the evidence, from which a jury could find that not only did his negligence not contribute in causing plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than him, and the hypothesization of facts in the instruction, or by proper reference to other instructions, must be complete in both respects. The instruction as above set out and as given at the request of defendant Blanton did not hypothesize facts showing a sole cause situation, and therefore, the giving of the instruction was prejudicial error.

Plaintiff also contends that no proper sole cause instruction could have been given because when the evidence is considered most favorably to defendant Blanton, it cannot present a sole cause situation. The judgment in favor of defendant Blanton must be reversed, and because on a second trial the evidence may not be precisely the same, nothing would be gained by ruling this question on this appeal. However, in the event of a second

trial, the trial court must necessarily be guided by the evidence then adduced and by the principles announced on this issue in Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131; Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853; Weis v. Melvin, Mo. Sup., 219 S.W.2d 310; Bunch v. Mueller, Mo.Sup., 284 S.W.2d 440; and Lix v. Gastian, Mo.App., 287 S.W.2d 354.

Plaintiff also assigns as error the giving of an instruction on behalf of defendant Blanton which submitted contributory negligence on the part of the plaintiff. We consider this assignment because the question undoubtedly will arise again in the event of another trial. The instruction was as follows: "The Court instructs the jury that plaintiff was required to exercise that degree of care which an ordinarily careful and prudent person, under the same or similar circumstances, would exercise for her own safety, and plaintiff could not entrust herself absolutely to the driver of the vehicle in which she was riding. The Court further instructs the jury that, if you find and believe from the evidence, as the automobile in which plaintiff was riding approached and closely neared the place of collision, described in evidence, plaintiff, by the exercise of ordinary care, could have seen the automobile of defendant Blanton being operated from the Starlet Drive-In Theater, and if you further find it would have been apparent to a reasonably careful and prudent person that defendant Blanton intended to operate his automobile from aforesaid theater and onto the paved portion of the highway, upon which the automobile occupied by the plaintiff was traveling, and if you find that plaintiff saw, or by the exercise of ordinary care on her part could have seen, there was danger of collision between the automobile in which she was riding and the automobile operated by defendant Blanton, in time thereafter, by the exercise of ordinary care, to have timely and effectively warned her husband of such danger, if you so find, and thereby have prevented the collision in question, if so, and if you find that plaintiff failed to so act to influence the situation for her safety and that her failure to so act was negligence which directly contributed to cause the collision in question and plaintiff's injuries, if you so find, then you are instructed that your verdict must be for defendant and against plaintiff Gladys Happy."

■ The giving of this instruction was error. It requires that in the exercise of ordinary care, plaintiff, as a guest passenger, had to maintain a lookout and warn the driver of the automobile in which she was riding of dangerous situations she could have seen if she had maintained a lookout even though the driver of the automobile had been exercising the highest degree of care and plaintiff had no reason to believe he would not continue to do so. This is not a correct statement of the legal duty of a guest passenger in an automobile. Only mischief and confusion could result from a requirement that in the exercise of ordinary care every guest passenger must at all times be a "back seat driver."

■ A guest passenger in an automobile is required to exercise only ordinary care for his own safety. State ex rel. Alton Railroad Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, 238; Toburen v. Carter, Mo.Sup., 273 S.W.2d 161; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642. A guest may not entrust his safety absolutely to the driver regardless of the impending danger or apparent lack of ordinary caution on the part of the driver, but the guest is not required to exercise the same vigilance as the driver, nor does he have the same obligation to look for danger. Smith v. St. Louis-San Francisco Railway Co., 321 Mo. 105, 9 S.W.2d 939; Fann v. Farmer, Mo.App., 289 S.W.2d 144, 147. "In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control

of the vehicle." Toburen v. Carter, supra; Ketcham v. Thomas, supra [273 S.W.2d 164.]; Fann v. Farmer, supra.

 The duty of a guest, in the exercise of ordinary care, is to warn the driver of known imminence of danger, and, when the driver has been or is exercising a visible lack of caution, to take such action as an ordinarily or reasonably prudent and careful person would take under the same or similar circumstances, which could, among other things, include the maintenance of a lookout for dangerous situations. In this case there is no evidence that there was anything said or done by plaintiff's husband which would indicate to a passenger in the exercise of ordinary care that he was not exercising, or that it could be anticipated that he would not exercise, the highest degree of care in the operation of his automobile. Under the circumstances there was no duty on plaintiff to maintain a lookout for automobiles approaching the highway on private driveways from the side. Even if it be contended that under the circumstances the speed at which plaintiff's husband was operating the car could constitute a visible lack of caution to a passenger in the exercise of ordinary care, which we doubt, the instruction does not hypothesize facts from which a jury could make this determination. This instruction imposed a greater duty on plaintiff than the law requires under the circumstances, and for that reason was erroneous.

Plaintiff next asserts that the trial court erred in giving a sole cause instruction on behalf of defendant Hutchings in which he submitted that the negligence of defendant Blanton was the sole proximate cause of plaintiff's injuries. Plaintiff concedes in her brief that this instruction "does hypothesize facts indicating negligence on the part of Blanton," and her objection to the instruction is directed solely to the proposition that it "fails to hypothesize sufficient sole cause facts to eliminate concurring negligence."

 By this instruction the jury was first required to find that Hutchings "was not negligent as defined in the other instructions." This referred principally to plaintiff's instruction which submitted to the jury two specific assignments of primary negligence on the part of Hutchings in that he failed to keep a lookout and was driving at an excessive speed under the circumstances. An identical attack on a sole cause instruction substantially the same in its material parts as the one here was held to be without merit in Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912. When a defendant hypothesizes facts, supported by the evidence, to show that the injuries to plaintiff were the result of the negligence of someone other than him, and also requires the jury to find that he was not negligent as submitted in the other instructions, he has by the facts hypothesized in that instruction and by reference to other instructions, at least in a primary negligence case, submitted a complete sole cause situation. See Gower v. Trumbo, Mo.Sup., 181 S.W.2d 653, and Knox v. Weathers, supra. Of course, when the instruction sufficiently requires the jury to find that defendant Hutchings was not negligent at all in the respects charged against him, as it did in this case, it is not necessary that the instruction also require a finding that he was not guilty of concurring negligence.

 Plaintiff relies principally on Johnson v. Cox, Mo.Sup., 262 S.W.2d 13, 15. There a sole cause instruction was held to be erroneous because the instruction did not "hypothesize facts, a finding of which would exclude defendant's negligence as a possible concurring cause of the collision." That was a humanitarian negligence case based on defendant's failure to stop or swerve, and defendant's sole cause instruction submitted abstractly as sole cause negligence the deceased's speed and failure to have a light burning on his motorcycle. It did require a finding that "defendant was not guilty of negligence as submitted in other instructions herein,"

which referred only to the failure of defendant to stop or swerve after the deceased entered a position of imminent peril. It was held that the sole cause instruction did not "present a complete state of facts and circumstances exonerating defendant of negligence and demonstrating that plaintiff was at fault and the responsible cause of the collision," and that the instruction was confusing because it "tended to divert attention from the humanitarian issue as to whether defendant should have seen deceased in time to have avoided the collision by stopping or swerving; and it could be so understood as to authorize the jury to find deceased's antecedent negligence a bar to plaintiff's recovery." None of these criticisms apply to the instruction in this case. Here we are concerned only with primary negligence. The instruction clearly told the jury that if it found that under the circumstances Hutchings was not guilty of any negligence charged against him by the other instructions, and if it further found that the facts as hypothesized pertaining to the acts of defendant Blanton constituted negligence which was the sole cause of the collision and the resulting injuries to plaintiff, then it should find the issues in favor of defendant Hutchings. There was no misdirection by the instruction, and we do not see how the jury could have been confused by it. In the final analysis these are the two basic tests which determine the sufficiency of any instruction. The instruction was not erroneous for the reason assigned.

The next contention is that the trial court erred in admitting exhibits DB–8 and DB–9 offered by defendant Blanton, and in which offer defendant Hutchings stated he concurred, which consisted of two inter-office communications of the Remington Arms Company, Inc., Lake City Arsenal. These records were offered in evidence under the Uniform Business Records Act, Sections 490.660 to 490.690 RSMo 1949, V.A. M.S., as an exception to the hearsay rule. The records were identified by the chief clerk of employment records at the Arsenal who testified that they were kept in the usual course of business and that he was the custodian of the records. These two exhibits constituted a part of the entire employment file pertaining to plaintiff, the remainder of which was introduced in evidence without objection.

The contents of the two exhibits were hearsay. Exhibit DB–8 consisted of a memorandum prepared by the "Case Area Supervisor" to "Employment Records," dated October 10, 1958, in which it was recited that during her period of employment with the Lake City Arsenal plaintiff had been absent approximately ninety-five days due to personal illness, that she had been given light work because of her physical condition, that the medical department of the Arsenal had recommended that she be given "a sitting down job" if available, that no such job was available, and that her employment supervisor had recommended that she "be discontinued because of not being industrially suited." Exhibit DB–9 dated October 23, 1953, consisted of a memorandum from the personal supervisor to "Employment Records" in which it was recited that on October 12, 1953, the personnel supervisor had notified plaintiff that she was "being discontinued as industrially unsuited," that she had agreed that her physical condition was such that it was necessary for her to have a job which would permit her to sit down all the time, and that she accepted the verdict "in perfect good grace." It was also stated that plaintiff's husband had called on the case area supervisor on the night of October 12, 1953, and was "considerably aggravated" that his wife had been "discontinued," and that he contended that the Arsenal "could not drop her" the way it did without a week's notice, that it owed her a week's pay and two weeks' vacation pay, and "the proper authorities" would hear about it.

Plaintiff had testified at length concerning the extent of the injuries she received in the accident and concerning her physi-

cal condition thereafter. She had also testified, in substance, that prior to the accident she had been in good health and had not been sick, and that the termination of her employment at the Arsenal was due to a general lay off.

The objection at the time the exhibits were offered was directed to the admission of the entire documents on the ground that they were hearsay, and because they were not admissible as an exception thereto under the Uniform Business Records Act. No effort was made to point out the specific objectionable features, although in referring to both exhibits counsel for plaintiff at one time stated that "This is hearsay and is not admissible in total, if admissible in part, and we object because it is hearsay." The allegation of error in the brief is directed at the whole of the two exhibits.

█ If any part or parts of the respective exhibits were admissible, the objection as to that exhibit was properly overruled. Allen v. St. Louis Public Service Company, Mo.Sup., 285 S.W.2d 663, 667; Schwinegruber v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 782. Portions of each exhibit were clearly admissible. As to Exhibit DB–8, it was proper to show the days absent from work by plaintiff because of personal illness, that she had been given light work because of her physical condition, and that the "medical department" of the Arsenal had recommended that she be given "a sitting down job" because of her physical condition. As to Exhibit DB–9 it was proper to show the reason for the termination of her employment and that at the time she agreed that her physical condition required it.

A plaintiff cannot testify that prior to an accident for which she claims damages she was in good health, and that because of the accident she has since been in poor health, or at least not in good health, and then object to the admission of evidence in the form of regularly kept business records of her former employer to show that less than one year before the accident she was frequently absent from work because of poor health, and that because of her physical condition she could not continue in her employment. Under the circumstances, and in view of the scope of the objections made by plaintiff, the court did not commit error in admitting the two exhibits.

The judgment as to defendant Hutchings is affirmed, and the judgment as to defendant Blanton is reversed and the cause remanded

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.