**FORD MOTOR CREDIT COMPANY LLC, Plaintiff–Respondent,**

v.

**David HARRIS, Defendant–Appellant.**

**No. SD 31568.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 9, 2012.

Donald M. Brown, Bolivar, MO, for Appellant.

Bradley D. Pierce, St. Louis, MO, for Respondent.

DON E. BURRELL, J.

David Harris ("Buyer") appeals the deficiency judgment awarded against him after a bench trial in favor of Ford Motor Credit Company, LLC ("Assignee") on its claim that Buyer breached his automobile purchase agreement. Buyer's single, multifarious point claims the trial court erred in finding that Assignee satisfied its burden of proof because Assignee failed to properly authenticate "certain business records" and no substantial evidence proved that Buyer's repossessed vehicle "was disposed of in a commercially reason-

able manner[.]" Because Buyer failed to properly preserve his error claims, we affirm.

## Applicable Principles of Review & Substantive Law

The trial court's judgment is presumed correct; it is Buyer's burden to demonstrate that it is incorrect. *Delaney v. Gibson,* 639 S.W.2d 601, 604 (Mo. banc 1982). As a result, we must affirm the judgment unless Buyer successfully demonstrates that there is "no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Ford Motor Credit Co. v. Henson,* 34 S.W.3d 448, 450 (Mo.App. S.D.2001). We view the evidence and all reasonable inferences from it in the light most favorable to the judgment, and we must disregard all contrary evidence and inferences. *Id.* We presume that the trial court correctly overruled objections to proffered evidence, and we will reverse only if the trial court abused its discretion. *C & W Asset Acquisition, LLC v. Somogyi,* 136 S.W.3d 134, 137 (Mo.App. S.D.2004). "A [trial] court abuses its discretion in ruling on the admissibility of evidence when its ruling is illogical and so unreasonable and arbitrary that it shocks our sense of justice or indicates a lack of careful, deliberate consideration." *Stokes v. National Presto Indus., Inc.,* 168 S.W.3d 481, 483 (Mo.App. W.D. 2005).

### The Admission of Business Records

Section 490.680 [1] operates as a "business records exception" to the hearsay rule, *see*

---

1. All references to section 490.680 are to RSMo 2000. All other statutory references are to RSMo Cum.Supp.2011. Unless other-
wise indicated, all rule references are to Missouri Court Rules (2012).

*Discover Bank v. Smith*, 326 S.W.3d 120, 123 (Mo.App. S.D.2010), and provides that such a record is

> competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

### Disposition of Collateral after Default

■ A secured party's disposition of collateral after default is governed by section 400.9–610, which states,

> Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Missouri requires strict compliance with this provision, *Henson*, 34 S.W.3d at 450, and compliance is a matter to be proven by the secured party; there is no requirement that the debtor raise commercial unreasonableness as an affirmative defense. *Citizens Nat'l Bank v. Robertson*, 101 S.W.3d 302, 304 (Mo.App. E.D.2003). Whether a

sale is commercially reasonable is a question of fact. *Id.; Henson*, 34 S.W.3d at 451. When a fact is contested, we defer to the assessment of evidence made by the trial court. *See Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012).

### Facts and Procedural Background

■ Assignee's only witness at trial was Ann Tummons, a business development manager for Assignee. Ms. Tummons testified that the records she brought to court as "Plaintiff's Group Exhibit 1" ("Exhibit 1"[2]) were kept under the care, custody and control of Assignee in connection with its business dealings with Buyer. She said she had worked for Assignee for 25 years in different positions.

Ms. Tummons was familiar with Assignee's policies and procedures regarding its records, and she testified that the documents in Exhibit 1 were prepared in the regular course of Assignee's business. "To the best of [her] knowledge," the documents contained in Exhibit 1 were prepared "at or reasonably contemporaneously with" matters stated in the records. When Assignee's counsel offered Exhibit 1 into evidence, counsel for Buyer stated, "Your Honor, I would—I would object due to the lack of the witness' qualification to authenticate a document from Blue Ridge Imports, Incorporated ["Dealer"] and/or Mazda American Credit." The trial court

---

**2.** Buyer did not deposit Exhibit 1 with this court. Instead, Buyer included a purported copy of Exhibit 1 in the appendix to his brief. Rule 81.12(a) requires that the record on appeal contain all of the record necessary to decide the questions presented on appeal. Under Rule 81.12(c), it is the appellant's duty to compile the record. *Lester E. Cox Med. Ctrs. v. Richards*, 252 S.W.3d 236, 241 (Mo. App. S.D.2008). Although Rule 84.04(h) allows an appendix to contain copies of exhibits, the original exhibits must be deposited with this court as required by rules 81.12(e) and 81.16(a). *Cf. In re Marriage of Weinshenker*, 177 S.W.3d 859, 864 (Mo.App. E.D. 2005) (citing a previous version of Rule 81.16 that allowed exhibits to either be deposited with or filed with the appellate court). "Documents attached to a party's brief that are not part of the legal file are not considered on appeal." *Id.*

overruled the objection, stating that "a sufficient foundation has been laid to show that these are the records of Ford Motor Credit, which [Ms. Tummons] purports to be a custodian of." [3]

Ms. Tummons testified that Exhibit 1 included "a Missouri Retail Installment Contract" showing that Buyer bought a 2005 Hyundai Elantra ("the vehicle"), "gap protection," and an extended warranty from Dealer in July 2008 for $9,999. The contract interest rate was 12.49%, and the total cost for the vehicle, with financing, was $17,633.40, payable in 60 monthly installments of $268.89 each. The contract stated that if Buyer defaulted on his monthly payments, the vehicle could be repossessed, and Buyer would be liable for attorney fees. Ms. Tummons testified that the contract "specifically provide[d]" an assignment to Assignee, doing business as Mazda American Credit. Ms. Tummons also testified without objection that Exhibit 1 included a credit application that showed Assignee as having an interest in the transaction "from the beginning[.]"

Ms. Tummons testified that Buyer made a total of 15 payments, and he made no further payments after January 5, 2010. Assignee provided notice of default to Buyer, dated February 5, 2010, and gave him until February 25, 2010, to pay the past-due amount. When Buyer did not pay the arrearages by that date, Assignee repossessed the vehicle. Assignee then sent another notice on March 5, 2010, that informed Buyer that Assignee intended to sell the vehicle at a private sale. The notice gave Buyer ten days from the date of the notice to redeem the vehicle. According to Ms. Tummons, both notices were included in Exhibit 1.

In testifying about a report on the condition of the vehicle at the time Assignee repossessed it, Ms. Tummons referred to a "Manheim Auction" [4] document contained in Exhibit 1. At this point, Buyer's counsel stated, "Your Honor, I'm going to just—just for the record renew my objection to any documents from Manheim Auction, as there is simply nobody here to authenticate this business record." [5] The trial court overruled the objection, stating that "the earlier foundation covered the entire [Assignee] batch of documents of Exhibit 1."

Ms. Tummons went on to testify that the vehicle was "[n]ot in very good condition. Below average." Specifically, "it had hail damage, [a] cracked windshield, dents, dings, and there were burn holes in the—on the interior of the vehicle. The battery was dead. The oil was dirty." Assignee estimated the vehicle's value at "a little more than $3,900." According to Ms. Tummons, "[t]he auction said it would be worth around [$]4,175." After Buyer's redemption period had expired, Assignee had the vehicle sold by Manheim Auction at a "[d]ealers only" auction that resulted in a sale price of $4,000. Buyer did not object to any of the foregoing testimony.

Ms. Tummons also testified—without objection—that it was customary for Assignee to sell repossessed vehicles at Man-

---

**3.** After the trial court had overruled the objection, Ms. Tummons testified that "Mazda American Credit is just a d/b/a of Ford Motor Credit."

**4.** At various points in the trial, counsel for the parties referred to this entity as "Manheim Auction," "Manheim Auto Auction," and "Manheim." We will use the name "Manheim Auction."

**5.** The record does not contain any prior reference to Manheim Auction.

heim Auction, and she was aware that other finance companies sold repossessed cars "in this fashion[.]" Based upon her experience, the sale of the vehicle was a commercially reasonable sale. She personally attended "the auctions from time to time," but she did not think that she was at the auction in which Buyer's vehicle was sold. After subtracting all credits and then adding repossession fees and interest as of the date of the sale, Buyer owed $5,910.26 under the contract. Ms. Tummons requested that Assignee be awarded attorney fees of $886.54, plus additional interest at 12.49% from the date of the sale. Buyer's counsel cross-examined Ms. Tummons, but he presented no other evidence on behalf of Buyer.

The trial court found that the vehicle was "picked up in substandard condition[,]" and stated, "The fact that they were able to get $4,000 at a sale for dealers present, and I have—frankly, believe that's about as commercially reasonable as you can expect." It thereafter entered judgment for $5,910.26 as principal, $614.72 in interest, and $886.54 for attorney fees for a total award of $7,411.52, plus court costs and post-judgment interest. Buyer's appeal timely followed.

## Analysis

Buyer's point states:

> The trial court erred in finding and concluding that [Assignee] met its burden of proving that [Assignee] was entitled to a judgment for deficiency after disposition of collateral authenticity [sic] because the trial court's final judgment,

findings, and conclusions as to the existence of the foundational requirements of business records and the standard for commercial reasonableness of collateral disposition were not supported by substantial evidence, were against the weight of the evidence, and erroneously declared or applied the law in that [Assignee] failed to submit substantial evidence to support the authentication of certain business records which were introduced and accepted into evidence at trial; and in that [Assignee] failed to prove [sic] to submit substantial evidence to support a finding that the collateral in question was disposed of in a commercially reasonable manner in all respects as required by § 400.9–610 RSMo.[6]

■ Buyer's brief fails to develop Buyer's challenges to the weight of the evidence and any erroneous declaration of law by the trial court. As a result, we deem those portions of the point abandoned, see *Pitman Place Dev., LLC v. Howard Invs., LLC*, 330 S.W.3d 519, 537 (Mo.App. E.D.2010), and we will consider only Buyer's remaining challenges to the admission of Exhibit 1 and whether substantial evidence supported the trial court's finding that the vehicle was sold in a commercially reasonable manner.

### Exhibit 1 Was Properly Admitted

■ Buyer argues on appeal that the trial court allowed Ms. Tummons to testify about the business records Assignee obtained from Dealer when "[t]here was no testimony whatsoever to indicate whether

6. The point improperly combines a challenge to the admission of an exhibit into evidence with a challenge to the sufficiency of evidence in support of the judgment. Multifarious points do not comply with Rule 84.04. *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo.App. S.D.2006). But when the structure of appellant's contentions does not impede our review, we may exercise discretion to reach the merits, and we will do so here. *Cf. id.*

Ms. Tummons had personal knowledge of the mode of preparation of the documents or whether the records were made at or near the time of [the] act, condition or event giving rise to [Assignee's] claim."[7] This is a significantly more detailed objection than the trial objection "to the lack of the witness' qualification to authenticate a document from Blue Ridge Imports, Incorporated ["Dealer"] and/or Mazda American Credit." Buyer also argues that as to "the collateral sale documents from Manheim Auction," Ms. Tummons "had no actual knowledge to testify" concerning the mode of their preparation or whether they were made at or near the event giving rise to Assignee's claim.

██ Under section 490.680, "the records 'custodian' or 'other qualified witness' has to testify to the record's identity, mode of preparation, and that it was made in the regular course of business, at or near the time of the event that it records." *CACH, LLC v. Askew,* 358 S.W.3d 58, 63 (Mo. banc 2012). "[P]ersonal knowledge of the sponsoring witness as to the mode of prep-

aration of the documents sought to be admitted as business records is not required for the admission of those documents," *Asset Acceptance v. Lodge,* 325 S.W.3d 525, 528 (Mo.App. E.D.2010), but a record that was actually "prepared by one business cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record." *CACH,* 358 S.W.3d at 63.[8]

██ In the instant case, Buyer's counsel objected to Exhibit 1 (a group of various documents) "due to the lack of the witness' qualification to authenticate a document from [Dealer], and/or Mazda American Credit." Assignee argues that the objection "was too general to advise the trial court about the basis of the objection" because it: 1) did not specify what legal element was missing, thereby making it "nothing more than an objection to a 'lack of foundation'"; and it 2) failed to identify the documents within the exhibit that were the target of the objection. While we

7. Buyer also argues that "no testimony was produced to show that [Ms. Tummons] was ever an employee of [Assignee], much less the actual records custodian for [Assignee]." That assertion is refuted by the record. Ms. Tummons testified that she was a 25–year employee of Assignee. Perhaps Buyer intended to argue that Ms. Tummons was not employed by Dealer, but as discussed, *infra,* the argument would have failed due to the deficiency of Buyer's trial objection.

8. In *CACH,* several separate exhibits were offered as evidence concerning the defendant's credit card account. One of those exhibits (Exhibit 7) was purportedly a bill of sale transferring several unnamed accounts from one entity to another entity (neither being CACH) in the chain of entities that had purchased accounts from the company the defendant had originally contracted with for a credit card. *Id.* at 60–61.

[Defendant's] objection at trial was that CACH did not lay a proper foundation for Exhibit 7 to qualify it for the business records exception to the rule against the admission of hearsay. Specifically, he objected on the basis that [the records custodian] was not a witness qualified, pursuant to § 490.680, to lay a foundation for Exhibit 7 as a business record. *Id.* at 62–63. The records custodian testified that Exhibit 7 was created "in the normal and ordinary course of business[,]" but she worked for CACH, and it was not established that she had any knowledge of the procedures used by the other entities involved. *Id.* at 64, 65. The Court found her testimony "insufficient to create the probability of trustworthiness on which [section 490.680] relies." *Id.* at 64. As a result, our high court held that the exhibit was erroneously admitted. *Id.* at 65.

agree with these arguments,[9] Buyer's point fails for a more fundamental reason.

Buyer's failure to deposit Exhibit 1 with this court causes us to presume that the omitted exhibit contained documents that Ms. Tummons was qualified to authenticate. *See Briar Rd., L.L.C. v. Lezah Stenger Homes, Inc.*, 321 S.W.3d 488, 492 (Mo. App. S.D.2010) (an exhibit not deposited with the court is presumed to favor the judgment and not favor appellant's position). As a result, Buyer's objection to the admission of Exhibit 1 fails.

### Substantial Evidence that Sale was Commercially Reasonable

■■■ The second briefed portion of Buyer's point contends that Assignee's evidence of the commercial reasonableness of the sale was insufficient "in every respect as required by Missouri statute[,]" citing cases in which proof of commercial reasonableness was held insufficient.[10] As earlier noted, the commercial reasonableness of a sale is a question of fact. *Henson*, 34 S.W.3d at 451. And section 400.9–627(b)(3) provides that the "disposition of collateral is made in a commercially rea-

---

9. "A general objection to 'lack of foundation' will not preserve alleged errors because it fails to direct the trial court's attention to the specific foundational element considered deficient." *Jerry Bennett Masonry, Inc. v. Crossland Constr. Co.*, 171 S.W.3d 81, 99 (Mo.App. S.D.2005). And "[t]he principle is well established that if any part of an exhibit is admissible an objection going to the whole of it is properly overruled." *Breshears v. Union Elec. Co.*, 373 S.W.2d 948, 952 (Mo. banc 1964). In *Happy v. Blanton*, 303 S.W.2d 633, 641 (Mo. banc 1957), an employee objected to the admission of two exhibits which were a part of her employment file on the ground that "they were hearsay, and because they were not admissible as an exception thereto under the Uniform Business Records Act [sections 490.660 to 490.690 RSMo 1949]." She argued that the exhibits were not wholly admissible, even if they were admissible in part, but she made "[n]o effort ... to point out the specific objectionable features[.]" *Id.* Our high court held that "[i]f any part or parts of the respective exhibits were admissible, the objection as to that exhibit was properly overruled." *Id.* "Objectionable parts may be excluded if proper specific objection is made." *Sigrist By & Through Sigrist v. Clarke*, 935 S.W.2d 350, 353 (Mo.App. S.D.1996). Buyer made no effort to distinguish for the trial court which, if any, portions of Exhibit 1 consisted of Dealer's records as distinguished from Assignee's records, and "[i]t was certainly not the duty of the trial court to sift the wheat from the chaff." *Allen v. St. Louis Pub. Serv. Co.*, 365 Mo. 677, 285 S.W.2d 663, 667–68 (1956) (blanket objection to entire exhibit insufficient where portions of plaintiff's medical record exhibit were admissible). Buyer's subsequent objection to "any documents from Manheim Auction" also lacked any specific reference to which portions of Exhibit 1 were at issue. More importantly, this second objection came after the entire exhibit had already been admitted into evidence. "It is incumbent on an objecting party to make the basis of his or her objection reasonably apparent in order to provide the opponent an opportunity to correct the error and the court an opportunity to correctly rule the objection." *Soutee v. Director of Rev.*, 977 S.W.2d 313, 315 (Mo.App. S.D.1998) (holding that a general request to reserve the right to ask that breathalyzer test results be stricken was equivalent to asserting no objection to its admission). "There is no basis to later object about the admission of a document, in whole or in part, once the trial court has admitted it in evidence." *Sullivan v. Director of Rev.*, 980 S.W.2d 339, 341 (Mo.App. S.D.1998).

10. *See Henson*, 34 S.W.3d at 450–51 (testimony only established time and price of sale and failed to establish method, manner, or place of sale); *Citizens Nat'l Bank*, 101 S.W.3d at 304 (evidence showed vehicle's condition at time of sale and sales price, but not method, manner, place, or purchaser); and *Consumer Fin. Corp. v. Reams*, 158 S.W.3d 792, 797–98 (Mo.App. W.D.2005) (evidence showed that the vehicle was sold at auction for a certain price, but nothing else as to commercial reasonableness such as whether the vendor sells other repossessed vehicles).

sonable manner if the disposition is made ... in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." [11]

Although the trial court's written judgment did not expressly find that the sale of the vehicle was made in a commercially reasonable manner, it did find that Assignee was "justly entitled to recover," and the trial court orally announced at the conclusion of trial that the sale was "about as commercially reasonable as you can expect." We consider the facts to have been found in accord with the judgment. *See Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 814 (Mo.App. S.D.2008).

Buyer argues that Assignee did not establish that it used Manheim Auction for other repossessed vehicles and that the use of a private dealer auction was a reasonable commercial practice among dealers. He also asserts that Ms. Tummons's testimony that the price received was reasonable constituted a conclusory statement lacking any underlying factual support. Buyer insists that while "[Manheim Auction] has offices at the location cited on its

invoice [ ], there was absolutely no evidence presented by [Assignee] as to where the particular auction of the vehicle in question took place." Buyer also asserts that because Ms. Tummons was not personally present for the vehicle's sale, it was impossible for her to testify that the location and time were commercially reasonable.

The unobjected-to evidence before the trial court included Ms. Tummons's testimony that Assignee notified Buyer that it intended to sell the vehicle at a private sale if Buyer did not redeem the vehicle within ten days; the vehicle was in "[b]elow average" condition based upon its damaged exterior, damaged interior, dead battery and dirty oil; Assignee had valued the vehicle at "a little more than $3,900"; and Manheim Auction sold the vehicle at a dealers-only auction for $4,000.

As to Buyer's specific complaint about Assignee's failure to prove the date and time of the sale, Buyer's failure to deposit Exhibit 1 again causes us to presume that it contained evidence from which the time and place of the sale could be gleaned. *Briar Rd.*, 321 S.W.3d at 492.

11. Assignee also points out that "dealer-only" auctions have been recognized in other jurisdictions as a commercially reasonable manner of selling repossessed vehicles, but it is apparent in the cited cases that the issue is still a question of fact. *See Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F.Supp. 813, 835 (E.D.Pa.1993) (trial court found that despite conflicting evidence, dealer-only auction was commercially reasonable where there was no evidence that the method did not conform to reasonable commercial practices in the industry or evidence suggesting that another method would yield higher than average book value); *Daniel v. Ford Motor Credit Co.*, 612 So.2d 483, 485 (Ala.Civ.App.1992) (testimony supported that "wholesale dealer auction is the usual manner of sale of repossessed automobiles" and conformed to reasonable practices among dealers in repossessed automo-

biles"); *Beard v. Ford Motor Credit Co.*, 41 Ark.App. 174, 850 S.W.2d 23, 28–29 (1993) (dealer-only auction is a private sale; "commercially reasonable manner" is an issue of fact with deference to the fact finder); *Union Nat'l Bank of Wichita v. Schmitz*, 18 Kan. App.2d 403, 853 P.2d 1180, 1187 (1993) (dealer-only auctions are a type of private sale that are not per se commercially unreasonable and "adequate proof" demonstrated that particular sale was commercially reasonable); *Ford Motor Credit Co. v. Russell*, 519 N.W.2d 460, 465 (Minn.App.1994) (creditor offered sufficient evidence that dealer-only auction was "well-recognized market for hundreds of auto dealers in the Minneapolis area" so that creditor could rely on presumption of commercial reasonability under Minnesota law and debtor failed to prove that the sale in such a market was unreasonable).

Ms. Tummons also testified, without objection, that Assignee customarily sold repossessed vehicles through Manheim Auction, she was aware that other finance companies sold repossessed cars in the same way, and based upon her 25 years experience working for Assignee, the vehicle's sale was commercially reasonable. Because Buyer did not object at trial to the admissibility of her opinion, the issue is not preserved for our review. *See George Weis Co. v. Dwyer*, 956 S.W.2d 335, 339 (Mo.App. E.D.1997) ("to argue on appeal that the subject of [an expert's] testimony was improper, [the challenging party] must object on that basis during trial"). Thus, Buyer's claim that no substantial evidence supported a finding that the sale was made in a commercially reasonable manner also fails. *See Delaney*, 639 S.W.2d at 604.

Buyer's point is denied, and the judgment of the trial court is affirmed.

JEFFREY W. BATES, J. and DANIEL E. SCOTT, P.J., CONCUR.