

# Missouri Court of Appeals
## Southern District
### Division One

| | | |
|---|---|---|
| In re the Marriage of:<br>Robert Shawn Eakens and Billie Jean Eakens | ) ) ) ) | |
| ROBERT SHAWN EAKENS, | ) ) | |
| Petitioner-Appellant, | ) ) | |
| vs. | ) ) | No. SD37063 |
| BILLIE JEAN EAKENS, | ) ) | **Filed:  July 5, 2022** |
| Respondent-Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

The Honorable William Edward Reeves, Judge

**<u>AFFIRMED</u>**

Robert Shawn Eakens ("Husband") appeals from a judgment entered January 27, 2021, dissolving his marriage to Billie Jean Eakens ("Wife") and dividing marital property and debts between them.  In three points relied on, Husband claims:  (1) the trial court "erroneously applied the law" in classifying a Sterling Bank account that ended in 8395 as marital property because the account contained funds received by Husband and Husband's brother as beneficiaries of a life insurance policy on their father; (2) the trial

1

court's valuation of the marital home at $175,000 and award of the home and related debt to Husband "creat[ed] an inequitable distribution of assets so heavy in favor of [Wife] as to amount to an abuse of discretion"; and (3) the trial court's judgment classifying the Sterling Bank account ending in 8395 as marital property, and valuing and awarding to Husband the marital home and related debt "was so heavily in favor of [Wife] as to amount to an abuse of discretion."  We disagree, deny each point, and affirm the trial court's judgment.

## Facts and Procedural Background

Trial occurred on September 3, 2020.  Viewed in accordance with our standard of review, the evidence at trial showed the following.  Husband and Wife were married in October 1992.  Husband subsequently filed a petition for dissolution of marriage on May 7, 2019, and Wife filed a counter-petition for dissolution of marriage in June 2019.

At the time of trial, Wife was 47 years old, was a high-school graduate, worked at Cornerstone Pharmacy as a pharmacy technician, and "earn[ed] approximately $37,000 a year."  Wife did "not have any retirement" benefit through her current or past employment.  The "majority of the years" Husband and Wife were married, Husband's "income was less than $50,000 a year," but had increased more recently and was over $70,000 in 2018.  Husband's income increased to approximately $80,000 a year by the time of trial.  After high school, Husband "did auto collision repair work," and continued doing that work when he began college in 2006.  Before Husband began college, Wife "stayed at home with [the couple's] children," and then started working when Husband began college.  On obtaining a degree in accounting, Husband began working for the federal government in 2010.  Husband also has a "CPA license."

2

Wife has the "inherited cancer gene" "BRCA 1," and has had multiple surgeries beginning in 2015, and will have at least one additional surgery in the near future. Wife's current health insurance was through Husband's employment, but she could obtain health insurance through her employment at the cost of "around" $200 a month with a significantly higher deductible ($2,000 versus zero with Husband's insurance).

Wife had "moved out of the marital home" in January 2020 and was residing with her sister at the time of trial. Husband continued to reside in the marital home. A 2014 appraisal of the marital home for the purpose of refinancing the original mortgage was offered by Wife and admitted into evidence without objection, and opined the home had a value equal to $175,000. At the time of trial, the amount owed on the home "was a little over [$]73,000." Wife believed the marital home was "worth" $175,000 based on the appraisal, and requested that Husband "remain in the home and that [she] . . . receive half the equity."[1]

Husband opened two accounts at Sterling Bank on April 20, 2018, and claimed that the account ending in 8395 was his nonmarital property. Wife was "not aware" of

---

[1] Husband testified he did not agree with Wife's valuation, and that the "last Zillow estimate" produced "around [a $]144,000 sale price" and a "net proceeds value" of "around" $95,000. Husband believed the roofs on the home and shop were leaking in places, and the "leaks . . . have damaged wood and stuff." Husband had not obtained an estimate of the cost to repair the home and shop at the time of trial. Because the parties were "so far apart" on the marital home's value, Husband believed "really the only way" to divide the home was for the trial court to order that the home "be sold and . . . the net proceeds be divided equally between" the parties. Husband acknowledged that it was "convenient" for him to stay at the marital home because the shop "takes care" of his hobby "working with automobiles."

In an answer to an interrogatory, Husband said the marital home "was appraised on 11-17 for a value of 175[,000]."

3

the two accounts at Sterling Bank "until [Husband] filed for divorce" and answered an interrogatory. Wife had no first-hand knowledge about those two accounts, but Husband "told" her one of the accounts at Sterling Bank "was used to house his father's life insurance when his father died." Wife "knew [Husband] had the life insurance money, but . . . didn't know where he had put it." Wife's attorney also "went over some" of the records for Sterling Bank with Wife. Wife requested that the accounts at Sterling Bank be divided equally between Husband and her. On cross-examination, Wife acknowledged that "$36,000" of the amount in the Sterling Bank account ending in 8395 "was life insurance" because she "received a copy of the life insurance check made payable" to Husband "in discovery," and that she "knew that [Husband] inherited money from his father through a life insurance account." Wife declined to agree she knew a similar deposit was Husband's brother's life insurance check stating, "I don't know that as fact. I didn't see, I haven't seen that."[2] No life insurance check or other documentary evidence of life insurance was offered as evidence at trial, and the only witnesses at trial were Husband and Wife.

---

[2] Husband testified the purpose of the Sterling Bank account ending in 8395 "was to hold some life insurance proceeds that I received from my father." Husband testified he opened the account with $60 cash, and then deposited his "father's life insurance check that was made payable to" Husband in an amount "somewhere along" $37,000, and "a second life insurance check" "made payable to" Husband's brother because the brother "was taking [their] father's death real hard and not acting rationally." Husband testified his father died in March 2018, and Husband received the life insurance proceeds reasonably soon after the father's death. Husband further testified he told his wife about "the existence of" the account, and that she was "aware" Husband "received [the] insurance proceeds from [his] father's death" and "knew" his brother's insurance proceeds also were in the account.

Based on bank records admitted into evidence at trial, Husband opened the Sterling Bank account ending in 8395 on April 20, 2018, with a deposit of $60 and a bank promotional deposit of $10; followed by a deposit of $37,650 on April 23, 2018; and followed by a deposit of $37,650 on May 7, 2018. Then, almost one year later and less than one month before Husband filed his petition for dissolution, Husband wrote a check on the account payable to his brother in the amount of $37,650. Husband testified that, at the time of trial, the account had a balance of "[$]600 or less" because Husband had used the account to purchase several "totaled vehicles" for he and his son to repair and resell. The portion of the bank records introduced by Wife and included in Husband's appendix to his brief do not show the source document for, or a description of, any of the deposits into the account other than the $10 bank promotional deposit – only the amount and date of each deposit are shown.[3] Husband testified that he provided a

---

[3] Husband included Wife's Exhibits C (2014 appraisal of the marital home) and H (division of marital property and debt) and a portion of D (bank records for the Sterling Bank Account ending in 8395) in his appendix, but did not deposit the original of those exhibits with us. Rule 84.04(h), Missouri Court Rules (2022), permits "copies of exhibits" to be included in an appendix, but Rule 81.16, Missouri Court Rules (2022), requires that "original exhibits" "necessary to the determination of any point relied on" "shall be deposited" with us by the appellant. Generally, copies of exhibits included in an appellant's appendix but not deposited properly with us are not part of the legal file and are not considered on appeal. *Ford Motor Credit Co. LLC v. Harris*, 386 S.W.3d 864, 867 n.2, 871 (Mo. App. S.D. 2012); *Anglin Family Investments v. Hobbs*, 375 S.W.3d 244, 248-49 nn.5-6 (Mo. App. S.D. 2012); and *Wheeles v. Wheeles*, 577 S.W.3d 839, 841-42 (Mo. App. E.D. 2019). However, the portion of Wife's Exhibit D included in Husband's appendix appears to be a subset of Documents 14 and 15 in the legal file (with the addition of an account opening document). Also, we assume an exhibit not deposited properly with us is presumed to favor the judgment and not the appellant's position. *Ford Motor Credit Co. LLC v. Harris*, 386 S.W.3d at 871. Further, Husband provided us with copies of these exhibits, and

5

copy of the life insurance check payable to him to Wife before trial, and, if necessary, could provide a copy of the life insurance check payable to Husband's brother. However, neither check was offered or admitted as evidence at trial.

Husband testified that, over the course of the marriage, he and Wife would "save up money" for larger expenses and purchases (e.g., flood insurance, property tax, the purchase of a vehicle), and Husband would place the money in a home safe that Husband currently keeps in his locked home office. Husband estimated that, at the time of trial, Husband had "around $400" in the safe – but on occasion the amounts have been significantly larger.

In its judgment, the trial court found: (1) Wife has been diagnosed with BRCA 1 Positive, and had major surgeries twice in 2015 and twice in 2016 and "is in need of an additional surgery"; (2) neither party alleged marital misconduct by the other; (3) Wife's valuation of the marital home (i.e., $175.000) to be credible, rejected Husband's valuation, and the debt on the marital home was $73,000; and (4) all bank accounts, including the Sterling Bank account ending in 8395, were marital property and determined the value of the account ending in 8395 to be $75,330.41, which was the account's beginning balance on April 6, 2019. The trial court: (1) awarded the marital home to Husband and allocated the marital debt on the marital home to Husband; (2) determined Wife's Exhibit H is a "true, correct, fair and equitable" division of Husband

---

neither Husband nor Wife contest the authenticity or accuracy of the copies of these exhibits. *See* ***Anglin Family Investments v. Hobbs***, 375 S.W.3d at 249 n.6 (not necessary to resolve on appeal factual dispute between parties on amount of payment as in part opposing party "does not contest [other parties'] figure on appeal"). In these circumstances, we believe it is appropriate to consider these exhibits to the extent necessary to refute Husband's arguments.

and Wife's marital assets and ordered Husband to pay Wife $106,501.53 to equalize the

net value of the marital property and marital debt awarded and allocated to each; (3) set

apart to Husband as Husband's nonmarital property an inheritance from his father's estate

with a value of approximately $21,400; and (4) made the following credibility

determinations: "The Court does not find Petitioner's testimony credible as to the

amount of undisclosed cash in his home safe. . . . That this case is an example of a case

which is ultimately decided by credibility determinations. . . . The Court finds that some

of the testimony of Petitioner was not credible."

**Standard of Review**

> "[T]he trial court's decision in a court-tried case is presumed correct, and the appellant has the burden of showing error." *McAllister v. McAllister*, 101 S.W.3d 287, 291 (Mo.App.E.D.2003). We must affirm the judgment in a dissolution case "if there is substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously declares nor erroneously applies the law." *In re Marriage of Hillis*, 313 S.W.3d 643, 644 (Mo. banc 2010). We "defer to the factfinder's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences." *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). "A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Short v. Short*, 356 S.W.3d 235, 240 (Mo.App.E.D.2011). "When no express finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result." *In re Marriage of Holden*, 81 S.W.3d 217, 226–27 (Mo.App.S.D.2002). While the classification of property as either "marital or non-marital is a question of law we review de novo [,]" *Short*, 356 S.W.3d at 243, we defer to the trial court's determination of the facts that underlie such a classification. *See Glenn v. Glenn*, 345 S.W.3d 320, 326 (Mo.App.S.D.2011) (trial court has discretion to determine witness credibility for purposes of classifying property as marital and non-marital).

*Stroh v. Stroh*, 454 S.W.3d 351, 354-55 (Mo. App. S.D. 2014).

**Analysis**

*Point 1 – Husband Failed to Overcome the Presumption that the Sterling Bank Account Ending in 8395 Was Marital Property*

In his first point, Husband claims the trial court "erroneously applied the law" in classifying the Sterling Bank account ending in 8395 as marital property because the account contained $37,650 Husband received shortly after his father's death as the beneficiary of a life insurance policy on his father, and $37,650 that Husband's brother received as a beneficiary of the policy.[4]  We deny this point because the bank account was presumed to be marital property under section 452.330.3, RSMo 2016, since the account was acquired by Husband after marriage and prior to a decree of legal separation or dissolution, and Husband failed to meet his burden to persuade the trial court that he had overcome that presumption.

Applicable Legal Principles

[4] Husband's first point does not comply with Rule 84.04(d)(1), Missouri Court Rules (2022).  As written, Husband's first point, asserts the trial court "erroneously applied the law" in classifying "life insurance proceeds [as] marital assets because [the proceeds were] commingled with [seventy dollars of] marital property."  The trial court neither classified life insurance proceeds as marital property nor determined that life insurance proceeds should be classified as marital property because the proceeds were commingled with marital property.  The trial court did recite the parties' respective positions on the existence and location of life insurance proceeds that Husband received on his father's death (i.e., Husband testified that he deposited two insurance company checks each for $37,650 into the account along with $70 of marital assets while Wife testified that she had no knowledge of the account and believed that the marital assets of $70 "comingl[ed] the entire balance"), but simply concluded "all bank accounts are marital in nature" and did not expressly adopt Wife's legal position on comingling.  The trial court awarded the Sterling Bank account ending in 8395 to Husband, and listed the value of the account at $75,330.14, which was the beginning balance of the account on April 6, 2019, before Husband transferred $37,650 from the account to his brother and then further used all but less than $600 of the funds in the account to purchase multiple vehicles for he and his son to repair and resell.

However, because the deficiencies in Husband's first point do not impair our ability to understand the substance of his claim, we exercise our discretion to review the point *ex gratia*.

8

Section 452.330.2, .3, and .4 provide in relevant part:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent; [and]

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent; . . . .

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

4. Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property.

Judicial authority further provides that:

"The burden is on the party who claims that the property is separate to overcome the presumption of marital property and show that it falls into one of the exceptions listed in Section 452.330.2." *Shaw v. Shaw*, 413 S.W.3d 332, 337 (Mo.App.W.D.2013). "Error in classifying property is not necessarily prejudicial unless it materially affects the merits of the action." *Jinks [v. Jinks]*, 120 S.W.3d [301,] 306 [(Mo. App. W.D. 2003)]. "The mere erroneous classification of property, where the decree is nonetheless fair, will not require a reversal." *Id*. Absent a contention in the point relied on that the erroneous classification resulted in an unfair overall division of property, the claim has been abandoned and reversal is not required.

*Stroh*, 454 S.W.3d at 363 (select citations omitted). Generally, proceeds received as a beneficiary of a life insurance policy on the life of another are treated as a gift under section 452.330.2. *Fields v. Fields*, 643 S.W.2d 611, 615 (Mo. App. W.D. 1982).

Discussion

9

Husband's first point is based entirely on Husband's testimony and on Wife's testimony that was, in turn, based on information Husband told Wife and on a copy of a life insurance check payable to Husband that Husband provided to Wife during discovery. However, neither that check nor any life insurance check payable to Husband's brother was offered or admitted as evidence at trial.[5] In addition, the portion of the bank records for the account that were admitted into evidence at trial and included in Husband's appendix to his brief, do not show the source document for, or a description of, any of the deposits into the account other than the $10 bank promotional deposit – only the amount and date of each deposit are shown.

The trial court found Husband not credible specifically noting: "The Court does not find Petitioner's testimony credible as to the amount of undisclosed cash in his home safe." "That this case is an example of a case which is ultimately decided by credibility determinations. . . . The Court finds that some of the testimony of Petitioner was not credible." It is clear that the trial court did not believe Husband's testimony - specifically that the source of the two separate $37,650 deposits totaling $75,300 deposited in the

---

[5] Seven days after the trial concluded and the trial court took the case under advisement, Husband filed a motion requesting to reopen the evidence for the purpose of offering a copy of two life insurance company checks as evidence – one check was payable to Husband; one check was payable to Husband's brother; and each check was dated April 11, 2018, and payable in the amount of $37,650. Wife objected to the motion. Husband renewed the motion slightly more than four months later, but the record provided us does not show that the trial court ever ruled Husband's motion and the evidence was not reopened. In any event, Husband does not challenge the trial court's action or inaction on his motion requesting to reopen the evidence, and we do not consider the motion further. *See **In re Marriage of Hall***, No. SD37056, 2022 WL 1467999, *2 (Mo. App. S.D. May 10, 2022) (a trial court's ruling on a request to reopen the evidence is reviewed for an abuse of discretion).

10

Sterling Bank account ending in 8395 were proceeds Husband and his brother received as beneficiaries of a life insurance policy on their father.

In light of the trial court's credibility findings, Husband failed to meet his burden to overcome the presumption the Sterling Bank account ending in 8395 was marital property. The trial court did not misapply the law in classifying the account as marital property.[6] Husband's first point relied on is denied.

*Points 2 and 3 – The Trial Court did not "Abuse" Its "Discretion" (1) in Valuing the Marital Home at $175,000 and Awarding the Home and Related Debt to Husband, or (2) in Dividing the Marital Property and Debts Between Husband and Wife Based on the Classification of the Sterling Bank Account Ending in 8395 as Marital Property and the Valuation and Award to Husband of the Marital Home and Related Debt*

In his second point, Husband asserts the trial court's valuation of the marital home at $175,000 and award of the home and related debt to Husband "creat[ed] an inequitable distribution of assets so heavy in favor of [Wife] as to amount to an abuse of discretion." In his third point and related argument, Husband claims the trial court's judgment classifying the Sterling Bank account ending in 8395 as marital property, and valuing and awarding to Husband the marital home and related debt "was so heavily in favor of [Wife] as to amount to an abuse of discretion."[7] We consider these two points together as both points involve similar issues.

---

[6] Although an assertion that the erroneous classification of the account as marital property resulted in an unfair overall division of property perhaps may be implied in Husband's first point from the claims made in Husband's second and third points, there is no express assertion to that effect in Husband's first point. To the extent Husband's first point is deficient as a result, we exercise our discretion to review Husband's first point *ex gratia*.

[7] Again, Husband's third point does not comply with Rule 84.04(d)(1). As before, because the deficiencies in Husband's third point do not impair our ability to understand the substance of his claim, we exercise our discretion to review the point *ex gratia*.

11

Applicable Legal Principles

Section 452.330.1 provides in relevant part:

. . . the court shall set apart to each spouse such spouse's nonmarital property
and shall divide the marital property and marital debts in such proportions
as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the
division of property is to become effective . . .;

(2) The contribution of each spouse to the acquisition of the marital
property, including the contribution of a spouse as homemaker; [and]

(3) The value of the nonmarital property set apart to each spouse;

. . . .

Judicial authority further provides:

"Although the division of marital assets and debts need not be equal,
it must be just and equitable." *Nichols [v. Nichols]*, 14 S.W.3d [630,] 635
[(Mo. App. E.D. 2000)] (footnote omitted). "The division of marital
property is left to the sound discretion of the trial court, and its decision will
be upheld unless an abuse of discretion is shown." *Noland–Vance v. Vance*,
321 S.W.3d 398, 423 (Mo.App.S.D.2010). "We presume that the trial
court's division of property is correct, and the party opposing the division
bears the burden of overcoming this presumption." *Nelson v. Nelson*, 25
S.W.3d 511, 517 (Mo.App.W.D.2000).

*Stroh*, 454 S.W.3d at 363. Further, "'[w]hen the trial court's valuation of property is

within the range of conflicting evidence of value offered at trial, the court acts within its

discretion to resolve conflicts in evidence.' *Taylor v. Taylor*, 25 S.W.3d 634, 644 (Mo.

App. W.D. 2000)." *Janet v. Janet*, 638 S.W.3d 570, 581 (Mo. App. W.D. 2021). And:

The trial court is vested with broad discretion in dividing marital
property and awarding maintenance. *Coleman [v. Coleman]*, 318 S.W.3d
[715,] 719 [(Mo. App. E.D. 2010)]; *Woodard v. Woodard*, 201 S.W.3d 557,
561 (Mo. App. E.D. 2006). "The trial court abuses its discretion only when
its ruling is clearly against the logic of the circumstances and is so arbitrary
and unreasonable as to shock one's sense of justice and indicate a lack of
careful consideration." *Coleman*, 318 S.W.3d at 720 (quotations omitted).
If reasonable minds could differ about the propriety of the trial court's

12

decision, there is no abuse of discretion. *French v. French*, 365 S.W.3d 285, 291 (Mo. App. S.D. 2012).

*Cureau v. Cureau*, 514 S.W.3d 685, 689 (Mo. App. E.D. 2017).

A 2014 appraisal of the marital home that valued the home at $175,000 was offered by Wife and admitted into evidence at trial. Wife also testified that she believed that the marital home was "worth" $175,000. Husband's only contrary evidence was his testimony that he disagreed with Wife's valuation and that the "last Zillow estimate" produced "around [a $]144,000 sale price" and a "net proceeds value" of "around" $95,000. The trial court did not abuse its discretion in resolving this conflict in the evidence by determining the value of the marital home to be $175,000. In addition, Husband fails to persuade us that he has overcome the presumption that awarding the marital home and related debt to Husband was correct (instead of ordering the home sold and net proceeds split equally between Husband and Wife), especially in light of the fact Husband was living in the home at the time of trial, that the shop "takes care" of his hobby "working with automobiles," and Wife was living with her sister at the time of trial. Husband's second point is denied.

Given that (1) Husband failed to meet his burden to overcome the presumption the Sterling Bank account ending in 8395 was marital property, (2) the trial court did not abuse its discretion in valuing the marital home at $175,000, and (3) Husband failed to meet his burden to overcome the presumption that the trial court's award of the marital home and related debt to Husband was correct, the trial court did not abuse its discretion in dividing the net value of the marital property equally between Husband and Wife by ordering Husband to make an equalization payment to Wife of $106,501.53. Based on the trial court's judgment and Wife's Exhibit H, the trial court awarded Husband marital property and debts with an aggregate net value of $232,935.87 (including the Sterling

Bank account ending in 8395 with a value of $75,330.41, the marital home with a value of $175,000, and related marital debt of $73,000), and awarded Wife marital property and debts with an aggregate net value of $19,932.80. The trial court then ordered Husband to pay Wife one-half of the difference between the two aggregate net values (i.e., $106,501.53) as an equalization payment. Ordering an equal division of the net value of marital property and debts between Husband and Wife was not an abuse of the trial court's discretion, especially in light of Wife's serious health issues and Wife beginning employment outside the home to facilitate Husband's return to college and obtaining a degree in accounting that allowed him to increase his pre-degree earnings significantly. Furthermore, Husband's compensation was nearly double Wife's compensation. A trial court's division of property does not have to be equal, simply just and equitable. Here, the trial court's division of property is presumed correct, and Husband has failed to meet his burden to convince us otherwise. Husband's third point is denied.

The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

DON E. BURRELL, J. – CONCURS