**ANGLIN FAMILY INVESTMENTS,
Plaintiff–Appellant/Respondent,**

v.

**Aimee Deanne HOBBS, n/k/a Aimee
Deanne Hodson, Defendant–Respondent/Cross–Appellant.**

**Nos. SD 31655, SD 31666.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 24, 2012.

Abe R. Paul, Pineville, MO, for appellant.

James B. Fleischaker, Joplin, MO, for respondent.

DON E. BURRELL, J.

This consolidated appeal and cross-appeal arise from a contract for deed ("contract") between Anglin Family Investments ("Seller") and Aimee Deanne Hobbs (now Hodson, "Buyer") that went wrong when a third party acquired title by adverse possession to a portion of the real property to be conveyed. After Buyer stopped making payments, Seller sued to eject Buyer from the property on the theory of unlawful detainer. Buyer counterclaimed, seeking a rescission of the contract based on a material decrease in the size of the real property that Seller could convey.

Following a bench trial, the trial court entered a judgment in favor of Buyer on her rescission claim. The judgment also ordered Seller to pay Buyer $9,528.47—the difference between the sum of the payments she had made under the contract and what the court determined to be the fair rental value of the property for the time period in which Buyer occupied it.

Seller claims: 1) the trial court erred as a matter of law in rescinding the contract because there was no mutual mistake; and 2) the trial court erred in finding that Seller materially breached the contract based upon the difference between the acreage Seller purported to be conveying and what Seller was subsequently adjudged to own. Buyer claims the trial court erred in awarding Seller a reasonable rental value because: 1) the contract provided that all payments would be returned to Buyer; and 2) Seller did not seek any recovery of rent in its petition. Based on a combination of briefing deficiencies and a failure to demonstrate prejudicial error, we affirm the judgment of the trial court.

## Facts and Procedural Background[1]

The parties executed the contract on January 23, 2009. The property to be conveyed consisted of a tract of land ("the land") with "a 16'x80' Fleetwood Mobile Home [listed serial number omitted] and improvements[.]" The description of the land was attached to the contract as "Exhibit A." Exhibit A contained a boundary survey and a legal description. The legal description concluded with, "This tract contains 5.09 acres, more or less." The survey showed that the boundary line of the land extended beyond a fence located near the southeastern edge of the land.

---

1. As it appears that "neither party requested findings of fact or conclusions of law, we view all factual issues as in accordance with the judgment of the trial court." *Greenstreet v. Fairchild*, 313 S.W.3d 163, 169 (Mo.App. S.D. 2010).

The promissory note signed by Buyer described the property to be conveyed as "being 5.09 acres of land and improvements and a 16'x80' Fleetwood Mobile Home [listed serial number omitted] located near [t]he Bethpage [c]ommunity."

Concerning the eventual conveyance of title, the contract provided:

> 5. This contract shall be closed upon full payment of the purchase price at which time [Seller] shall deliver to [Buyer] a General Warranty Deed containing the usual and customary warranties, conveying title good in fact and marketable of record, marketable within the meanings of the standards of the Missouri Bar Association.

Paragraph 8 of the contract provided that "if title shall be defective in such a way that it cannot be corrected within a reasonable time, then [Seller] shall return all payments made by [Buyer] to [Buyer] and this contract shall be null and void."

When she executed the contract, Buyer was aware that "the survey line" for the land extended past an old fence, and she believed that she could move the fence at any time because it was located inside the property line. After taking possession of the property from Seller, Buyer and her husband cleared brush from the "bottom part" of the land, "picked up all the rocks[,]" and put in a garden. Buyer also had a new fence installed along the property line as shown on the survey. Buyer and her husband made improvements to the mobile home by doing such things as painting, building cabinets, patching the roof, and removing old carpet.[2]

In February 2010, Buyer received a summons in connection with a lawsuit filed against Buyer and Seller by a neighboring property owner, "Mr. O'Brien."[3] Mr. O'Brien's petition claimed that he had acquired title by adverse possession to approximately .23 acre of the land located between the old fence and the property line ("the disputed land").[4] Buyer had not previously talked with Mr. O'Brien about the property line or the disputed land.

Buyer believed that the disputed land was "ruled" to be Mr. O'Brien's property in December 2010. At the request of Buyer's counsel, the trial court took judicial notice of a court file referred to as "O'Brien Enterprises v. Anglin Family Investments Partnership[.]"[5] As to the

---

2. Buyer did not offer evidence of the specific value of her improvements to the property except to state that "It was a lot. If you don't count the time, we had quite a bit in the—just the barbed wire and the fence posts."

3. Buyer said she paid $1,000 for legal representation in connection with Mr. O'Brien's suit.

4. Based upon Buyer's testimony, the trial court could reasonably infer that the disputed land included the portion Buyer had improved by clearing out brush and rocks and installing a garden.

5. In their questions, counsel for the parties sometimes referred to the plaintiff in the adverse possession suit as "Mr. O'Brien" and as "O'Brien Enterprises" on other occasions.

We will refer to the adverse possession plaintiff as "O'Brien Enterprises." The referenced court file was not deposited with this court, but both parties presented testimony in the instant case that the amount of land acquired by O'Brien Enterprises via adverse possession was .23 acre. Seller suggests in its brief that the area within Buyer's property was actually somewhat less than .23 acre because "a portion of the description of 'Tract 2' is beyond [Buyer's] west property line" and cites to a purported copy of Buyer's Exhibits "B" and "C." The referenced exhibits were not appropriately deposited with this court. Purported copies of the exhibits are included in Seller's appendix. But "[a]lthough Rule 84.04(h) allows an appendix to contain copies of exhibits, the originals of those exhibits must be filed or deposited with the court, as required by Rule 81.16. Documents attached to a par-

quality of the disputed land, Buyer testified that it "was about the only level spot [located on the "bottom part" of the land], other than up on the top by the trailer." As to its quantity, she said, "[W]hen there's only 5.09, .23 is a lot." Buyer admitted that she had received late notices on some of her payments, that she fell two months behind on payments, and that the last payment she paid on the contract was made in January 2011 for the installment due in November 2010.[6]

In February 2011, Buyer sent Seller a letter via her attorney that purported to rescind the contract because Seller could not provide "clear title" for the entire 5.09 acre tract of land she had agreed to purchase. Buyer then received Seller's summons in the instant case and moved from the property "around the 3rd or 4th of March[, 2011]." Buyer filed a counterclaim that specifically sought a "judgment declaring the contract and promissory note null and void[.]"

Bobby H. Anglin testified on behalf of Seller, without objection, that he estimated the reasonable rental value of the property "sold" to Buyer to be $600–$625.[7]

In its judgment, the trial court found: "that the acreage lost was material and [it] denie[d Seller's] unlawful detainer action"; that Buyer was entitled to prevail on her action to rescind the contract; that the reasonable rental value of the property during Buyer's time of possession was $15,300.00; and that "[s]ince [Buyer] paid [Seller] $24,828.47 she is entitled to reimbursement of $9,528.47 plus costs." After Seller timely appealed the judgment, Buyer timely filed her cross-appeal.

## Analysis

■ Our preference is to reach the merits of every appeal that comes before us. *Citizens for Ground Water Prot. v. Porter*, 275 S.W.3d 329, 346 n. 5 (Mo.App. S.D. 2008). Before engaging in that process to the greatest extent possible in this case, we must first address deficiencies in the parties' briefs that impede such a review.

■ The appropriate standard of review is a basic and critical concern in any appeal. Rule 84.04(e) requires the appellant's argument to "include a concise statement of the applicable standard of review for each claim of error." Although it may sometimes be possible to reach the merits of a claim of error that does not comply with Rule 84.04(e), "[n]oncompliance with this rule justifies dismissal of the point." *Citizens for Ground Water Prot.*, 275 S.W.3d at 347 n. 6. It is not that the appellate court cannot "determine the ap-

---

ty's brief that are not part of the legal file are not considered on appeal." *In re Marriage of Weinshenker*, 177 S.W.3d 859, 864 (Mo.App. E.D.2005). (Unless otherwise indicated, all rule references are to Missouri Court Rules (2012)). In any event, the issue is not material to our resolution of this appeal because, as discussed *infra*, the trial court simply found "that the acreage lost was material[.]"

**6.** As discussed below, the judgment found that Buyer had paid $24,828.47 to Seller—the sum Buyer alleged in her counterclaim. There is no evidence supporting that figure in the record; Buyer cites to Exhibit D—a letter from Buyer's counsel to another attorney for Seller—in support of this figure, but Exhibit D was not deposited with the Court. As a result, we cannot consider Exhibit D for its evidentiary value. *See Weinshenker*, 177 S.W.3d at 864. Seller's "Exhibit 2," a "Land Payment Report," was admitted into evidence and states that Buyer had paid a total of $24,371.96 on the contract, including late fees and escrow amounts. We need not resolve the matter as Seller does not contest Buyer's figure on appeal and states in its reply brief that "[t]he court's calculation was correct assuming rescission applies."

**7.** Based upon the other financial evidence adduced, the trial court could have reasonably inferred that this rental value was on a monthly basis.

plicable standard of review, [rather] it is not our duty to supplement the deficient brief with our own research." *Waller v. Shippey,* 251 S.W.3d 403, 406 (Mo.App. W.D.2008). Here, neither Seller nor Buyer cites any standard of review for their respective claims of error. We will discuss the effect of those omissions as we address each point relied on.

### *Seller's Appeal*

### *Point I—Mutual Mistake*

■ Seller's failure to address the standard of review compounds other problems inherent in its first point, which states: "The [trial court] erred as a matter of law in entering judgment on [Buyer's] counterclaim to rescind the real estate contract between the parties because there was no mutual mistake as to the terms of the contract or the property to be conveyed by [Seller] to [Buyer]." This point does not conform to the requirement in Rule 84.04(d)(1) that a point must identify the ruling or action alleged to be erroneous.

■ "The error contemplated by Rule 84.04(d) in a court-tried case is not the judgment itself but the trial court's actions or rulings on which the adverse judgment is based, such as explicitly or implicitly making or failing to make a certain factual finding, applying or failing to apply a particular rule of law, taking or failing to take a certain procedural action, etc." *Wheeler v. McDonnell Douglas Corp.,* 999 S.W.2d 279, 283 n. 2 (Mo.App. E.D.1999). "As appellate courts are fundamentally courts of error, a point relied on that does not identify specific error preserves nothing for appellate review." *Columbia Mut. Ins. Co. v. Long,* 258 S.W.3d 469, 473 (Mo.App. W.D.2008). "The requirements of Rule 84.04(d) are mandatory." *Hampton v. Francis,* 226 S.W.3d 234, 235 (Mo.App. E.D.2007).

While we may sometimes address *ex gratia* the arguments raised in such a defective point, *see Columbia Mut. Ins. Co.,* 258 S.W.3d at 474; *Wheeler,* 999 S.W.2d at 283 n. 2, it is difficult to do so in regard to Seller's first point because its apparent focus—whether there was a mutual mistake by the parties—does not appear to be the subject of any express ruling of the trial court. The point also fails to explain—in the context of the case as required by Rule 84.04(d)(1)(C)—why the trial court must have implicitly made such a finding. Indeed, the point also fails to "state concisely the legal reasons for the appellant's claim of reversible error" as required by Rule 84.04(d)(1)(B). In other words, to satisfy subsections (B) and (C), Seller's point should have asserted why the trial court must have found that there was a mutual mistake of material fact and why it was wrong to have done so in the context of the case.

Without such an assertion, addressing the claim on any merit it might have would require us to assume the impermissible role of an advocate. This we cannot do. *Cf. Arch Ins. Co. v. Progressive Cas. Ins. Co.,* 294 S.W.3d 520, 522 (Mo.App. W.D. 2009) (while the appellate court prefers to reach the merits, it should not become an advocate or issue precedent on issues not fully presented). As a result, Seller's first point fails.

### *Point II—Material Breach*

■ Seller's second point contends:

The trial court erred as a matter of law in rescinding the [contract] ... because the reduction in acreage as a result of the subsequent adverse possession judgment from 5.09 acres to 4.86 acres does not constitute a material breach for which the agreement between the parties should be rescinded.

Seller is correct that "[w]hether a breach of contract is material is a question of fact[,]" *Fire Sprinklers, Inc. v. Icon Contracting, Inc.*, 279 S.W.3d 230, 233 (Mo. App. E.D.2009). But Seller does not then point out that on "questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012). In the absence of a recitation of the appropriate standard of review, Seller mistakenly argues that the reduction in the size of the land lost through adverse possession was not material "as a matter of law" without addressing *why* the trial court was obligated to adopt Seller's view of the materiality of the loss.[8]

■ For instance, Seller does not address the fact that Buyer improved and used the disputed land or that the trial court could have inferred from the evidence at trial that the area in question had a greater value than other portions of the land because it was one of the only two flat areas on the land. We, however, must defer to the trial court's factual findings and recognize that it could "believe or disbelieve all or part of the witnesses' testimony." *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 655 (Mo.App. W.D. 2006). The judgment is presumed correct, and Seller, as the appellant on this point, has the burden of proving error. *Greenstreet*, 313 S.W.3d at 172. The manner in which Seller frames its second point and supporting argument without referring to the applicable standard of review or explaining how the trial court erred in the light of that standard dooms its ability to overcome the presumption that the judgment is correct. Point II of Seller's appeal is denied.[9]

## Buyer's Cross Appeal

### Point I—Ability to Assert a Counterclaim

■ Buyer's first point asserts she "was entitled to file a counter-claim against [Seller] because [Seller] included a count [in the petition] requesting injunctive relief along with its count seeking unlawful detainer." The entirety of the argument that follows is a single sentence,

---

8. Seller does this by attempting to distinguish several acreage cases involving claims of fraud. What Seller does not do is cite the factors a court should consider in deciding whether a breach is material.

There are five significant factors in determining whether a breach is material: "(1) the extent to which the injured party will be deprived of a reasonably expected benefit[;] (2) the extent to which the injured party can be compensated for the part of that deprived benefit[;] (3) the extent to which the party failing to perform will suffer forfeiture[;] (4) the likelihood that the party failing to perform will cure that failure[;] and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing." *McKnight v. Midwest Eye Inst. of Kansas City, Inc.*, 799 S.W.2d 909, 915 (Mo.App. W.D.1990)[internal citation omitted]. *Greenstreet*, 313 S.W.3d at 169.

9. We note that in its reply brief, Seller asserts what we take to be a new or additional point: "I. The [trial] court erred in finding that [Buyer] was entitled to a refund of payments made under the contract for deed in that [Buyer] did not fully perform her obligations under the contract and therefore Seller was not required to deliver perfect title until full performance by [Buyer]." Seller further argues in its reply brief that "Seller was obligated to provide [Buyer] with a good merchantable title to the real estate in question only upon payment in full of the purchase price under the terms of the contract" and that this would not happen until March 2039. This is a different issue than that asserted in Seller's original points and is not responsive to Buyer's points on appeal. We do not consider arguments raised for the first time in a reply brief. *Kells v. Missouri Mountain Prop., Inc.*, 247 S.W.3d 79, 84 n. 7 (Mo.App. S.D.2008).

which states, "Counter-claims are not normally permitted to be filed in unlawful detainer actions, but because [Seller] also filed a request for injunctive relief [Buyer] was entitled to file a counter-claim." (Case citation omitted.) But Buyer does not contend that the trial court prohibited her from asserting a counterclaim.[10] Without an allegation of trial court error, we have nothing to review. *See* Rule 84.04(d)(1); *Columbia Mut. Ins. Co.,* 258 S.W.3d at 473. Buyer's first point fails.

### Point II—Seller's Retention of Reasonable Rent

■ Buyer's second point contends the trial court erred in finding that Seller was entitled to a recovery of the rental value of the property for two reasons: 1) the contract "expressly provided for a return of all payments"; and 2) Seller "failed to plead that it was entitled to retain or recover any rent." As earlier noted, Buyer does not identify the standard of review governing her claim, but because the omission does not impede review or require us to act as Buyer's advocate, we will address it.

Buyer argues that "[a]llowing [Seller] to retain any of the funds paid by [Buyer] is in clear contravention of Paragraph 8 of the contract between the parties." Buyer then cites *Dunn Indus. Grp., Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428–29 (Mo. banc 2003), and other cases for the principle that it is unnecessary to apply rules of construction when a contract's term is clear. She does this, presumably, to suggest that the term in the contract regarding the return of Buyer's payments is clear.

■ The fatal flaw in the argument is that Buyer asked the trial court to *rescind* the contract, not enforce it. Instead of seeking any recovery based on an allegation that Seller had breached its terms, Buyer asked that the contract be declared "null and void[.]" "[O]ne cannot seek damages under the contract, yet seek the benefits of rescission." *Harris v. Desisto,* 932 S.W.2d 435, 447 (Mo.App. W.D.1996); *see also Holbert v. Whitaker,* 87 S.W.3d 360, 364 (Mo.App. E.D.2002) (holding a purchaser could not "recover for breach of a contract that has been rescinded").

■ "Rescission of a contract extinguishes it and restores the parties to the positions they occupied before the contract was executed." *Holbert,* 87 S.W.3d at 364. Once the trial court granted Buyer's request to rescind the contract, the terms of the rescinded agreement no longer governed the relationship between the parties and the trial court was free to do what it believed necessary to attempt to place the parties in the positions they were in before the contract was executed. "Rescission is an equitable remedy, and the decision by a court as to whether to award consequential damages unrelated to the contract should be driven by the equitable principles of fairness and justice." *Groothand v. Schlueter,* 949 S.W.2d 923, 931 (Mo.App. W.D.1997). "[T]here is no bright line rule for returning parties to the status quo after a court grants a rescission. The result can differ depending on the circumstances." *Id.; see also Harris,* 932 S.W.2d at 448 (upholding an award of attorneys fees as restitution by a court acting in equity to balance the benefits between the parties).

---

10. And the trial court's judgment granted the relief requested in Buyer's counterclaim—that the contract be rescinded. The assertion also does not appear to be responsive to any issue raised by Seller as Seller does not contend in its appeal that Buyer should have been barred from asserting a counterclaim.

Buyer agreed that she lived on the property for approximately 25 months; Seller consequently lost the use of the property for this same time period. To restore to Buyer all of the money she had paid on the contract would not put Seller in the position it had occupied before the contract was executed—when it could presumably have at least rented the property to another party—and it would have unjustly enriched Buyer by allowing her to live without cost on the property of another for just over two years.[11] As to the valuation of that benefit, Buyer did not object to Seller's evidence of rental value.

Buyer has failed to demonstrate that the trial court abused its discretion in balancing the equities and fashioning an appropriate remedy. Point II of Buyer's cross-appeal is denied, and the judgment of the trial court is affirmed.

JEFFREY W. BATES, J., DANIEL E. SCOTT, P.J., concur.

---

11. Buyer does not assert on appeal that the trial court erred in failing to account for the improvements she made to the property or the litigation expense she incurred in defending the adverse possession suit brought by O'Brien Enterprises.