# IN THE SUPREME COURT OF TEXAS

No. 19-0791

IN RE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND TERECINA SHAHAN, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

~ *consolidated for oral argument with* ~

No. 19-0792

IN RE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND TODD JOSEPH DAUPER, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**Argued December 2, 2020**

JUSTICE BLACKLOCK delivered the opinion of the Court.

These original proceedings arise from suits by holders of underinsured motorist ("UIM") insurance seeking recovery against their insurers following traffic accidents. Plaintiffs in such cases often bring claims for breach of their insurance policies as well as statutory, extracontractual claims authorized by the Insurance Code. The common practice has been to sever and abate the Insurance Code claims while an initial trial is conducted on the breach-of-contract claim to

determine whether the underinsured motorist was liable for the accident and, if so, the amount of damages suffered by the insured. A plaintiff who succeeds in this first phase of the case may then proceed to litigate its Insurance Code claims in light of the result of the initial trial.

A wrinkle in the cases before us is that the insureds did not sue for breach of their insurance policies. Although they seek recovery of the amount they claim to be owed under their policies, they brought only extracontractual, Insurance Code claims. They contend that because they brought only statutory claims, and because there are no breach-of-contract claims to sever and try first, no bifurcation of trial is required. As explained below, we disagree.

Under *USAA Texas Lloyds v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), a plaintiff seeking recovery of benefits owed under an insurance policy must first establish his entitlement to policy benefits as a contractual matter before he can recover them as damages for an Insurance Code claim. As a result, although the plaintiffs' claims in these cases are not labeled breach of contract, they nevertheless must establish State Farm's liability under their insurance policies as a prerequisite to recovery on their Insurance Code claims. Just as an initial "car crash" trial is typically required to determine the underinsured motorist's liability and the amount of damages when the insured brings both breach-of-contract and Insurance Code claims, insureds who bring only Insurance Code claims seeking policy benefits as damages must also succeed in an initial "car crash" trial in order to lay the predicate for their statutory claims. We therefore conditionally grant the petitions for writ of mandamus and direct the trial courts to proceed in accordance with this opinion.

## I.
## BACKGROUND

Real Parties in Interest Al Dodds and Alexander Nicastro have UIM insurance with State Farm. The same counsel represents Nicastro and Dodds in this Court.

2

Nicastro was injured when Dominique Smith allegedly swerved into Manuel Reyes who, in turn, collided with Nicastro. Nicastro seeks to recover "past medical expenses and anticipated future medical expenses totaling up to $438,247.00." According to State Farm, Nicastro provided documentation of $11,747 in incurred medical costs. Nicastro requested State Farm approve his acceptance of a $30,000 settlement with Smith's insurer. State Farm obliged and told Nicastro he "has been fully indemnified" for his medical expenses. Nicastro then sought UIM benefits from State Farm. His UIM policy limit is $100,000, but State Farm refused to pay anything.

Dodds was injured when Jose Cojchamale allegedly ran a red light and struck his vehicle. The impact caused Dodds to strike another vehicle. Dodds seeks to recover past medical expenses of $45,668.92 and future medical expenses of $212,250.00, totaling $257,918.92. With State Farm's approval, Dodds accepted a $30,000 settlement from Cojchamale's insurer, the maximum amount of Cojchamale's policy. Dodds then sought UIM benefits from State Farm, which paid Dodds an additional $18,190.41 without an explanation for the discrepancy between the amount paid and the amount requested. Dodds' UIM policy limit is $50,000.

Nicastro and Dodds both sued State Farm and two State Farm adjusters, who they allege failed "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear," TEX. INS. CODE § 541.060(a)(2)(A), and failed to "promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim," *id.* § 541.060(a)(3). Neither Nicastro nor Dodds sued State Farm for breach of his UIM policy.

Dodds' UIM policy covers amounts he is "legally entitled to recover" from an underinsured motorist when "the total limits of insurance and self-insurance for bodily injury liability from all

3

sources are less than the amount needed to compensate the *insured* for *bodily injury* damages." Nicastro's policy covers amounts he is "legally entitled to recover" from an underinsured motorist whose limit of liability "is not enough to pay the full amount the *covered person* is legally entitled to recover as damages." As damages for their Insurance Code claims, Nicastro and Dodds both seek the amounts State Farm allegedly should have paid them under their UIM policies.

In both cases, State Farm filed motions for bifurcated trial under Rule 174(b). State Farm argued that before its liability for Insurance Code claims can be determined, an initial trial is necessary to establish the liability and underinsured status of the other motorists. The matters to be determined in this initial trial, State Farm contends, are necessary predicates to the plaintiffs' statutory claims. As State Farm sees it, the plaintiffs must obtain a judicial determination that the third parties are liable for their injuries and are underinsured motorists before the plaintiffs can recover on their Insurance Code claims. Nicastro and Dodds opposed State Farm's motions, arguing that (1) they may recover UIM benefits as extracontractual damages without first establishing that they are "legally entitled to recover" from the underinsured motorists if they do not allege a breach-of-contract claim, and (2) this Court's decision in *USAA Texas Lloyds v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), overruled *Brainard v. Trinity Universal Insurance Co.*, 216 S.W.3d 809 (Tex. 2006), and changed well-established principles governing UIM claims.

The trial courts denied State Farm's motions. State Farm petitioned for mandamus relief in the Fifth Court of Appeals, arguing the trial courts abused their discretion in denying State Farm's motions to bifurcate. The court of appeals denied the petitions without substantive explanation. State Farm filed mandamus petitions in this Court.

## II.
## STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). Generally, mandamus relief is unavailable "to correct incidental trial court rulings when there is a remedy by appeal." *In re Entergy Corp.*, 142 S.W.3d 316, 320 (Tex. 2004) (orig. proceeding) (per curiam). A trial court abuses its discretion when its "ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). We determine the adequacy of an appellate remedy "by balancing the benefits of mandamus review against its detriments." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

## III.
## THE INSURANCE CODE CLAIMS

Nicastro and Dodds sued State Farm for violations of sections 541.060(a)(2)(A) and (a)(3) of the Insurance Code. An insurer violates section 541.060(a)(2)(A) if it "fail[s] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." An insurer violates section 541.060(a)(3) if it "fail[s] to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement." As an initial matter, the parties disagree about what the plaintiffs must show to recover on their Insurance Code claims. We must resolve that disagreement before assessing whether State Farm is entitled to the bifurcated trials it seeks.

State Farm contends a UIM insurer has no obligation to pay policy benefits as damages for Insurance Code claims unless the insured first establishes the insurer's liability under the UIM policy. To establish that liability, State Farm argues, the insured must obtain a judicial determination that the other motorist is liable for the crash and has insurance coverage insufficient to cover the insured's damages. Nicastro and Dodds disagree. They contend State Farm is liable to them if it violates the Insurance Code, irrespective of whether they can prove entitlement to policy benefits. They argue that to succeed on their Insurance Code claims they must only show that (1) State Farm failed to offer them fair settlements when its liability became "reasonably clear," or (2) State Farm failed to provide reasonable explanations for its denials of the claims or offers of compromise settlements. TEX. INS. CODE §§ 541.060(a)(2)(A), (a)(3).

In *Menchaca*,[1] this Court recognized two paths an insured may take to establish the damages caused by an insurer's violation of the Insurance Code: either the insured establishes (1) "a right to receive benefits under the policy" or (2) "an injury independent of a right to benefits."

---

[1] Understanding *Menchaca*'s precedential status requires careful examination of the different sections of the Court's opinion and the alignment of votes for each. With only eight Justices sitting, some parts of the opinion—sections III.B through III.G—garnered only a plurality of four or fewer votes. These portions of the opinion do not represent the view of a majority of the Court at the time and are therefore not binding precedent of the Court. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) ("Plurality opinions are not binding precedent of this Court."); *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994) ("Because the principles of law involved have not been agreed upon by a majority of the sitting court, the plurality opinion is not authority for determination of other cases, either in this Court or lower courts."). A majority of the Court, however, joined sections I, II, and III.A of *Menchaca*. These portions of *Menchaca* represent the opinion of a majority of the Court at the time, and they carry the full weight of the precedent of this Court. The citations to *Menchaca* contained in today's opinion all come from portions of *Menchaca* that unquestionably represent the precedent of this Court.

Section II of *Menchaca*—which garnered seven votes—articulates five interlocking legal principles applicable to insurance litigation, several of which have application in today's cases. *See* 545 S.W.3d at 486–503. Those principles are: (1) "an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to receive benefits under the policy"; (2) "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits"; (3) "an insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right"; (4) "an insurer's extra-contractual liability is 'distinct' from its liability for benefits under the insurance policy"; and (5) "[a]n insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to receive benefits." *Id*. at 490–502 (cleaned up).

545 S.W.3d at 500. Under the first path, if an insured "establishes a right to receive benefits under the insurance policy [he] can recover those benefits as 'actual damages' under the [Insurance Code] if the insurer's statutory violation causes the loss of benefits." *Id.* at 495. And under the second path, "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499. As *Menchaca* made clear, there is no alternative to these two pathways. "An insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *Id*. at 489.

The plaintiffs contend this two-pronged framework is limited to homeowners' insurance claims like the one in *Menchaca*, but that is not the case. The dual pathway outlined in *Menchaca* emerges from a line of cases that includes UIM cases and does not distinguish between varieties of insurance policies. *See, e.g.*, *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998) (addressing damages recoverable if an insurer fails to adequately investigate a health insurance policy claim); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (recognizing the possibility an insurer may cause injury independent of UIM policy claim when denying the claim); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1998) (developing test to assess whether insurer's denial of insurance claims was in "good faith" in workers' compensation context), *overruled by Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012).

## A.
### INDEPENDENT INJURY

Relying on *Menchaca*'s second path, Nicastro and Dodds allege State Farm caused them independent injuries by violating the Insurance Code. We continue to recognize "the possibility that in denying [a] claim, the insurer may commit some act, so extreme, that would cause injury

7

independent of the policy claim." *Stoker*, 903 S.W.2d at 341. To establish "injury independent of the policy claim," however, Nicastro and Dodds must show their "damages are truly independent of [their] right to receive policy benefits." *Menchaca*, 545 S.W.3d at 500. In other words, to recover under an independent-injury theory, the insureds must establish that State Farm's statutory violations caused an injury apart from State Farm's failure to pay as much as the insureds believe they should have been paid under their UIM policies.

Here, however, the only injury Nicastro and Dodds assert is State Farm's failure to adequately pay them under their UIM policies. They seek, as damages for their Insurance Code claims, the amount they believe State Farm should have offered or paid under the policies. This is precisely the theory of recovery *Menchaca* foreclosed in the absence of a right to policy benefits: "When an insured seeks to recover damages that are predicated on, flow from, or stem from policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits." *Id.*

Nicastro and Dodds emphasize that their claims under the Insurance Code are not premised on the denial of benefits. Instead, they are premised on the failure to offer a reasonable settlement and the failure to explain the denial of benefits. True, the *claims* are premised on State Farm's violations of the Insurance Code, not its violations of the UIM policies. But as explained in *Menchaca* and prior cases, when it comes to damages, the question is not whether the insured's *claims* are independent of the right to receive policy benefits. The question is whether the alleged "*damages* are truly independent of the insured's right to receive policy benefits." *Id.* at 499–500 (emphasis added); *see also Castañeda*, 988 S.W.2d at 198 ("[N]one of the actions or inactions of

8

Provident American was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim.").[2]

Again, the only damages claimed by Nicastro and Dodds are predicated on State Farm's obligation to pay them under their UIM policies. Said otherwise, the insureds' theory of damages is that if State Farm had followed the Insurance Code, it would have paid more in UIM benefits than it did. These are not "damages [that] are truly independent of the [ ] right to receive policy benefits." *Id.* To the contrary, the insureds' entitlement to these damages is entirely predicated on their entitlement to policy benefits. They assert no injuries independent of the denial or underpayment of benefits. Their statutory claims are merely a means to recoup damages in the amount of a reasonable settlement offer under the policies; they are not "truly independent" of Nicastro's and Dodds' rights to receive policy benefits. *See id.* at 499–500. As a result, the insureds cannot recover for State Farm's alleged Insurance Code violations under an "independent-injury" theory.[3]

---

[2] Quoting *Menchaca*, Nicastro and Dodds argue "an insured need not prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation." 545 S.W.3d at 504. They neglect, however, to cite another passage from *Menchaca* that clarifies this holding: "While an insured cannot recover policy benefits for a statutory violation unless the jury finds that the insured had a right to benefits under the policy, the insured does not also have to prevail on a separate breach-of-contract claim based on the insurer's failure to pay those benefits." *Id.* at 494. Under *Menchaca*, Nicastro and Dodds cannot simply allege statutory claims under the Insurance Code and thereby bypass the requirement that they establish their rights to receive benefits under their policies.

[3] Nicastro and Dodds correctly observe that State Farm's obligations under the Insurance Code are triggered as soon as its liability becomes "reasonably clear." *See* TEX. INS. CODE § 541.060(a)(2)(A). From this premise, they reason that they need not show State Farm's ultimate liability under the policies in order to establish that at some point its liability had become "reasonably clear." State Farm responds that its liability to pay a UIM claim does not become "reasonably clear" until "the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Brainard*, 216 S.W.3d at 818. We need not resolve that dispute, however. Regardless of *when* the insurer's statutory duty to attempt a good-faith settlement arises, *Menchaca* establishes that the insured does not suffer legally cognizable damages owing to the insurer's breach of that duty unless (1) he was actually owed benefits under the policy or (2) the refusal to settle causes him damages independent of his entitlement to policy benefits. 545 S.W.3d at 500.

**B.**
**RIGHT TO RECEIVE BENEFITS UNDER THE POLICY**

Because the insureds do not allege "damages [that] are truly independent of the insured's right to receive policy benefits," they must establish their rights to policy benefits in order to recover on their Insurance Code claims. *Id.* Establishing a right to UIM policy benefits, however, is not always a straightforward enterprise. As this Court previously observed, a "UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *Brainard*, 216 S.W.3d at 818.

This "unique" aspect of UIM claims arises from both the Insurance Code and the terms of UIM policies. The Insurance Code requires that UIM coverage must:

> provide for payment to the insured of all *sums which he shall be legally entitled to recover as damages* from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE § 1952.106 (emphasis added). The policies at issue here employ similar "legally entitled to recover" language. Under both the Insurance Code and these policies, State Farm "is obligated to pay damages which the insured is 'legally entitled to recover' from the underinsured motorist." *Brainard*, 216 S.W.3d at 818. In *Brainard*, we interpreted this language to mean that an "insurer's contractual obligation to pay benefits does not arise until liability and damages are determined." *Id.* Thus, in order to establish State Farm's liability to them under their UIM policies—as they must to recover on their Insurance Code claims—Nicastro and Dodds must first obtain determinations of the third-party drivers' liability and the amount of damages.

With this legal background in mind, we must decide whether State Farm is entitled to bifurcated trials, which would consist of (1) initial "car crash" trials to determine the underinsured motorists' liabilities and therefore State Farm's liability under the UIM policies and, if the insureds

10

succeed at the initial trials, (2) trials of the Insurance Code claims to determine whether State Farm violated its statutory obligations. State Farm urges us to follow the practice of the courts of appeals, which routinely require bifurcation of trial in cases, like these two, where the insurer's liability for statutory claims is predicated on its liability for breach of the UIM policy. *See, e.g.*, *In re Colonial Cnty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 WL 5699735, at *5 (Tex. App.— Houston [1st Dist.] Nov. 5, 2019, orig. proceeding) (per curiam) (mem. op.) (ordering the trial court to abate the severed statutory extracontractual claims until resolution of breach of contract suit).[4]

We agree with the many court of appeals decisions holding that "extra-contractual claims must be [bifurcated] until the underinsured motorist breach of contract claim is determined." *In re Allstate Fire & Cas. Ins. Co.*, No. 12-17-00266-CV, 2017 WL 5167350, at *4 (Tex. App.— Tyler Nov. 8, 2017, orig. proceeding) (mem. op.). In the unique context of UIM litigation, this common bifurcation process makes sense for at least two reasons.

First, bifurcation tends to preserve judicial resources. The plaintiffs' Insurance Code claims cannot be resolved without first determining whether State Farm has a contractual duty to pay UIM benefits. "The rationale for requiring [bifurcation] of these types of [statutory] claims is that they may be rendered moot by a determination of underlying [non-]liability." *Id.* The insureds' statutory claims need not be considered at all if State Farm has no duty to pay under their policies. Like any other litigant, "[i]nsurers have a substantial right not to undergo the expense of litigating and conducting discovery on issues that ultimately may be unnecessary because of the

---

[4] *See also In re Germania Ins. Co.*, No. 13-18-00102-CV, 2018 WL 1904911, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.) (severing and abating extracontractual claims pending resolution of contract claims); *In re State Farm. Mut. Auto Ins. Co.*, 395 S.W.3d 229, 240–41 (Tex. App.—El Paso 2012, orig. proceeding) (ordering trial court to sever and abate extracontractual claims pending determination of contract claim); *In re Am. Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d 429, 439 (Tex. App.—Austin 2012, orig. proceeding) (same); *In re State Farm Mut. Auto. Ins. Co.*, 553 S.W.3d 557, 565 (Tex. App.—San Antonio 2018, orig. proceeding) (finding the "trial court erred by not granting the abatement" of extracontractual claims).

11

result of the underlying tort case." *In re Colonial Cnty. Mut. Ins. Co.*, 2019 WL 5699735, at *5; *see also In re Germania Ins. Co.*, 2018 WL 1904911, at *4 ("If the causes were not severed, Germania would be required to put forth the effort and expense of conducting discovery, preparing for trial, and conducting voir dire on bad faith and other extra-contractual claims that could be rendered moot by the portion of the trial relating to breach of contract for uninsured motorist benefits.").

Second, bifurcation of trial is proper because evidence of the insurer's settlement offer may be admissible in one phase of the trial but inadmissible in the other. When determining whether an insurer has breached its UIM policy by failing to pay, courts frequently exclude evidence of a settlement offer because the offer "creates prejudice" by suggesting the insurer has already admitted some liability. *In re State Farm Mut. Auto. Ins. Co.*, 395 S.W.3d at 234; TEX. R. EVID. 408.[5] On the other hand, in the trial of bad-faith claims, the settlement offer is generally admissible as evidence of the insurer's good-faith (or bad-faith) efforts to resolve the claim. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996).[6] "Absent [bifurcation], an insurer is presented with a 'Catch-22' in that its decision to admit or exclude evidence of a settlement offer jeopardizes the successful defense of the other [issue]." *In re State Farm Mut. Auto. Ins. Co.*, 395 S.W.3d at 234. "[I]n this situation, the trial court can only reach one decision which adequately

---

[5] *See also Akin*, 927 S.W.2d at 630 ("[T]he insurer would be unfairly prejudiced by having to defend the contract claim at the same time and before the same jury that would consider evidence that the insurer had offered to settle the entire dispute."); *In re Progressive Cas. Ins. Co.*, No. 12-20-00220-CV, 2020 WL 6065933, at *3 (Tex. App.—Tyler Oct. 14, 2020, orig. proceeding) (mem. op.); *In re Old Am. Cnty. Mut. Fire Ins. Co.*, No. 13-11-00412-CV, 2012 WL 506570, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 16, 2012, orig. proceeding); *In re Travelers Lloyds of Tex. Ins. Co.*, 273 S.W.3d 368, 374 (Tex. App.—San Antonio 2008, orig. proceeding); *In re Allstate Ins. Co.*, No. 06-05-00051-CV, 2005 WL 1114640, at *2 (Tex. App.—Texarkana May 12, 2005, orig. proceeding) (mem. op.).

[6] *See also In re Miller*, 202 S.W.3d 922, 926 (Tex. App.—Tyler 2006, orig. proceeding); *In re Trinity Universal Ins. Co.*, 64 S.W.3d 463, 468 (Tex. App.—Amarillo 2011, orig. proceeding); *Tex. Farmers Ins. Co. v. Stem*, 927 S.W.2d 76, 80 (Tex. App.—Waco 1996, orig. proceeding); *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex. App.—Houston [14th Dist.] 1992, no writ).

protects the parties' rights and that is to order [bifurcation] of the [issues]." *In re Am. Nat'l Mut. Ins. Co.*, 384 S.W.3d at 435.

We agree with the consensus view of the courts of appeals on this point. Requiring State Farm to litigate its liability for UIM policy benefits alongside its liability for extracontractual claims would unduly prejudice the insurer and amounts to an abuse of discretion by the trial court. *See id.* at 434 ("[A] majority of intermediate courts of appeals have concluded that it is an abuse of discretion for a trial court to refuse to grant a severance of contractual claims from extra-contractual claims when an offer of settlement has been made by the insurer.").

Of course, all the court of appeals cases cited above arise from cases involving both breach-of-contract claims and Insurance Code claims. Nicastro and Dodds argue that their cases should be treated differently because they brought only Insurance Code claims. As a result, they contend, there is no breach-of-contract claim to "sever" and no claim to "abate." Even so, the logic of the commonly applied sever-and-abate rule applies with equal force here, although the procedural machinations may be slightly different. While Nicastro and Dodds pleaded their cases unlike past UIM plaintiffs, the showings they must make in order to recover are the same showings required of other UIM plaintiffs who pleaded both breach-of-contract and statutory claims and were required to try those claims separately.

Texas Rule of Civil Procedure 174(b) authorized the trial courts to bifurcate the trials of the insureds' Insurance Code claims, as requested by State Farm. The rule states: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, *or of any separate issue* or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." TEX. R. CIV. P. 174(b) (emphasis added). Thus, the trial courts could have ordered separate trials on the predicate issues of the

13

insureds' entitlements to benefits under their UIM policies. Nicastro and Dodds need not "add causes of action to [the] ongoing litigation," as they contend, for the logic of the severance-and-abatement rule to apply to bifurcation in their cases. Nor must they "file lawsuit[s] they do not want to bring." State Farm's motions sought bifurcation of the trials *of the Insurance Code claims*, pursuant to Rule 174(b), which would not require the plaintiffs to amend their pleadings or bring unwanted claims.

"When all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby, there is no room for the exercise of discretion." *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956). Because the Insurance Code claims at issue here require Nicastro and Dodds to make the very same showings as the many other plaintiffs whose UIM claims are routinely subject to bifurcated trials, the trial courts abused their discretion by denying State Farm's motions to bifurcate trial under Rule 174(b).

## IV.
## ADEQUATE APPELLATE REMEDY

State Farm argues it lacks an adequate appellate remedy due to the time and money it would waste waiting on the eventual reversal of improperly conducted proceedings. Nicastro and Dodds respond that State Farm has an adequate remedy by appeal: "It can pursue discovery, attempt to prove that it did not violate the Insurance Code, and seek summary judgment, a declaratory judgment, prevail at trial, and if it fails at any of these options, it can always challenge the sufficiency of the evidence (or any other adverse ruling) in a traditional appeal." Real Party in Interest's Response at 2–3. We agree with State Farm.

14

When a bifurcated trial is denied in these circumstances, the insurer lacks an adequate appellate remedy for the "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). We agree with the many courts of appeals that have found mandamus relief to be the only adequate remedy in similar cases.[7]

## V.
## CONCLUSION

We conditionally grant State Farm's petitions for writ of mandamus and direct the trial courts to bifurcate the trials of the Insurance Code claims as described herein. We are confident the trial courts will comply, and the writs will issue only if they do not.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** March 19, 2021

---

[7] *See, e.g.*, *In re Germania Ins. Co.*, 2018 WL 1904911, at *2; *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 509 S.W.3d 463, 468 (Tex. App.—Austin 2015, orig. proceeding); *In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding); *In re United Fire Lloyds*, 375 S.W.3d 250, 256 (Tex. App.—San Antonio 2010, orig. proceeding).